514 A.2d 642

Fair Winds Manor, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 4, 1986, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Suzanne Rauer*, with her, *Charles O. Barto, Jr.*, for petitioner.

*Bruce G. Baron*, Assistant Counsel, for respondent.

OPINION BY JUDGE PALLADINO, August 28, 1986:

Fair Winds Manor (Petitioner) appeals from an order of the Department of Public Welfare (Department)

which denied an appeal by Petitioner of a Department audit modifying certain portions of Petitioner's cost reports submitted to the Department for the purpose of calculating medical assistance reimbursements. We affirm.

The Petitioner is a nursing care facility which is presently owned by Kenneth and Zarah Blair. Formerly, Petitioner was owned by a partnership, Four Winds, Limited, consisting of the Blairs and Alfred and Marlene Brown, who were all general partners, and Charles and Helena Brown, who were limited partners. Zarah Blair and Alfred Brown are sister and brother, the children of Charles and Helena Brown.

Each of the general partners in Four Winds, Limited had an equal interest in and control of the property owned by the partnership. The Blairs, however, borrowed money against their equity and thus decreased their ownership interest in the partnership assets to eleven percent. Charles and Helena Brown, the two limited partners, had a total financial interest of $75,000.00 in the partnership.

After the formation of Four Winds, Limited, a consultant for the partnership determined that renovations to the facility were necessary to correct certain deficiencies which violated the Life Safety Code. In order to obtain a loan from the Commonwealth's Nursing Home Loan Agency, to finance the renovations, all of the general partners would have been required to sign personal guarantees for the loan. Alfred and Marlene Brown, however, refused to become personal guarantors of the loan. Consequently, in November of 1980, the Blairs purchased the interests both of Alfred and Marlene Brown and of Charles and Helena Brown, and the partnership was thereby dissolved. As of November, 1980, therefore, the Blairs were the sole owners of Petitioner.

In its cost report for fiscal year 1981, Petitioner calculated its depreciation expense using as its cost basis the amount paid by the Blairs in November of 1980 to purchase all of the partnership assets. The Department disallowed Petitioner's calculation of depreciation expense, however, having determined that Petitioner was not entitled to a stepped-up basis because the transfer of ownership which occurred in November of 1980 was a related-party transaction. The Department instead calculated Petitioner's depreciation expense using as the cost basis the original cost of the assets, less depreciation expense allowed in previous years.

Also, in Petitioner's cost reports for 1979, 1980 and 1981, Petitioner attempted to offset interest income earned on savings accounts containing short term operating funds, against interest expense on current (short term) indebtedness. The Department modified the offset, however, to the extent that it required Petitioner's interest income to be offset against interest expense from capital (long term) indebtedness rather than against that of current indebtedness.

Petitioner appealed the Department's decision and, after a hearing, the appeal was denied by the Department's Director, Office of Hearings and Appeals. In denying the appeal, the Director adopted the recommendation of an Attorney Examiner, who determined that the step-up in basis was properly disallowed because the Blairs' acquisition of the partnership assets was not the result of a normal buyer-seller relationship, and that the Department's policy of offsetting interest income first against capital indebtedness was a valid interpretation of the Department's regulations.

On appeal to this Court, Petitioner contends that it is entitled to a step-up in cost basis because the Blairs' acquisition of the partnership assets was the result of *bona fide* arm's-length negotiations, and because the

Department's decision misconstrues both the content and purpose of the applicable medical assistance regulations. Petitioner also argues that the Department's policy of offsetting investment income against interest expense from capital indebtedness is invalid because it is contrary to the applicable regulations and is, in effect, itself an improperly promulgated regulation.

Our scope of review of the Department's adjudication is limited to a determination of whether an error of law was committed, whether constitutional rights were violated, and whether or not the findings of fact are supported by substantial evidence of record. *Westmoreland Manor v. Department of Public Welfare*, 91 Pa. Commonwealth Ct. 155, 496 A.2d 1282 (1985).

As regards the question of whether the Department properly denied Petitioner a step-up in cost basis, the regulation at issue is Section IV (D)(9)(f) of the Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities[1] (Manual), which states that:

> The cost basis for depreciable assets of a facility purchased as an ongoing operation shall be the lesser of the purchase price or the fair market value based on the lesser of at least two *bona fide* appraisals at the time of the sale and less any straightline depreciation by the prior owner. The sale must be an arm's length transaction consummated in the open market between nonrelated parties in a normal buyer-seller relationship.

---

[1] 8 Pa. B. 2836. For the period at issue in the case at bar, the applicable version of the Manual is found at 8 Pa. B. 2832-2838 (1978). The Manual originally appeared at 5 Pa. B. 2928-2934 (1975), and has been codified in its current amended form at 55 Pa. Code §§1181.201-1181.274.

The Department's Attorney Examiner interpreted this Section to mean that a step-up in basis is allowable only if the sale of the depreciable assets is all of the following: (1) an arm's length transaction; (2) consummated in the open market; (3) between nonrelated parties; and (4) in a normal buyer-seller relationship.

Petitioner argues that the Department has misinterpreted the regulation, because said interpretation is insensitive to the regulation's underlying purpose. We note, however, that in construing administrative regulations, the ultimate criterion upon which this Court must rely "is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 81, 422 A.2d 480, 482 (1980). We conclude that the Department's interpretation is proper and is consistent with the regulation and, accordingly, that the interpretation must be upheld.

The *gravamen* of Petitioner's argument is that the intent of Section IV(D)(9)(f) is to prevent collusion between parties who are improperly attempting to obtain a step-up in cost basis. Petitioner contends that, because the Blairs' purchase of the partnership assets was at a market price and occurred only after arm's length negotiations, the sale in question does not contravene the purpose of Section IV(D)(9)(f) and, therefore, Petitioner is properly entitled to a step-up in basis. Petitioner's argument ignores, however, the fact that the plain language of the regulation imposes requirements beyond the mere requirement that there be no collusion between the parties to acquire a step-up in basis. Indeed, the requirements outlined in the regulation are, in effect, guidelines which are drawn so as to insure that no such collusion occurs. Because the Department's interpretation of Section IV(D)(9)(f) is in accord-

ance with the Section's plain language, and thereby gives effect to all of the specified guidelines, the Department's interpretation of the regulation must be viewed as controlling.

As the Department's Attorney Examiner found, and as Petitioner freely admits, the Blairs' buy-out of the other partners in Four Winds, Limited was necessitated by the fact that the facility was in need of renovation, and the loan to finance the renovation could be obtained only if it was personally guaranteed by all of the general partners. Because Alfred and Marlene Brown refused to sign as personal guarantors of the loan, and because, under the partnership agreement, they could not be forced to do so, it became incumbent upon the Blairs to acquire sole ownership of the partnership assets if they desired to continue operating the facility. Had the Blairs not obtained ownership of Petitioner, the Attorney Examiner found that "they could not have obtained the sought-after financing to renovate the nursing home and would have been forced to liquidate the partnership and its assets."

Based on these facts, the Attorney Examiner concluded that the forced buy-out of the partnership could not be construed as a "normal buyer-seller relationship," which assumes that there is no compulsion on the buyer to buy, or on the seller to sell. The Attorney Examiner accordingly held that this requirement of Section IV(D)(9)(f) had not been satisfied, and that Petitioner must therefore be denied a step-up in basis. Because the Attorney Examiner properly applied the Section IV(D)(9)(f) guidelines, and because his findings are supported by substantial evidence of record, we must affirm the Department's denial of a step-up in basis.[2]

---

[2] While Petitioner raises the issue of whether or not the sale of the partnership assets was a transaction between nonrelated parties, a determination of that issue is unnecessary to our decision in this case, and we do not address it.

Petitioner contends that the Department's interpretation of Section IV(D)(9)(f) effectively discourages participation in the Medical Assistance Program, by subjecting providers in the position of Petitioner to severe financial hardship. As this Court has previously held, however, the regulation "may not be invalidated merely because it appears to be burdensome or inferior to another means of addressing this particular subject. Rather, the rule must be so unreasonable as to be the expression of a whim instead of an exercise of judgment." *Mountain Rest Nursing Home, Inc. v. Department of Public Welfare*, 73 Pa. Commonwealth Ct. 42, 48, 457 A.2d 600, 603 (1983). In this regard, we note that the Department's interpretation of Section IV(D)(9)(f) does not preclude the sale of partnership assets in the manner as occurred in the case at bar, but rather denies to such sales the benefit of a step-up in cost basis. We hold that the denial of such a benefit is not enough to warrant invalidation of the regulation by this Court.

As for the question of the validity of the Department's policy of offsetting investment income against interest expense from capital indebtedness, the applicable regulation, Section IV(D)(10)(e) of the Manual,[3] provides as follows: "Interest expense reduced by investment income . . . will be recognized." In applying this provision, the Department has adopted the practice of offsetting all investment income first against interest expense from capital indebtedness, if any, while any remainder is offset against interest expense from current indebtedness.

We reiterate that, in construing a regulation, this Court will give great deference to the administrative interpretation, which is controlling unless it is plainly erroneous or inconsistent with the regulation. *Forbes*

---

[3] 8 Pa. B. 2837.

*Health System.* In applying this standard, it is appropriate "to determine whether or not there was 'specific authorization' for the challenged activity and whether or not the agency's interpretation is 'plainly inconsistent with the wording of the regulations.'" *Allied Services for the Handicapped, Inc. v. Department of Public Welfare,* 78 Pa. Commonwealth Ct. 297, 299, 467 A.2d 646, 647 (1983), *quoting Forbes Health System,* 492 Pa. at 82, 422 A.2d at 482.

In view of the standard as outlined above, we are constrained to uphold the Department's practice of offsetting investment income against interest expense from capital indebtedness. First, there is no 'specific authorization' which would justify the practice argued for by Petitioner, of offsetting interest received from short term savings accounts against interest expense from current indebtedness. Moreover, the Department's practice does result in the deduction of investment income from interest expense, and so the practice is not plainly inconsistent with the wording of Section IV(D)(10)(e). We conclude therefore that the Department's offset practice is a valid interpretation of Section IV(D)(10)(e), which serves merely to clarify the method by which the regulation is to be applied in offsetting investment income against interest expense.

The order of the Department is affirmed.

### ORDER

AND NOW, August 28, 1986, the order of the Department of Public Welfare, at File Nos. 23-82-265, 23-80-184, and 23-81-140, dated December 11, 1984, is affirmed.

### ORDER

AND NOW, September 24, 1986, the petition for award of bill of costs filed by the Commonwealth of

Pennsylvania, Department of Public Welfare pursuant to Pa. R.A.P. 2741(2) is granted. Fair Winds Manor is directed to pay costs in the amount of $94.84 to the Department of Public Welfare.