535 A.2d 42

**FAIR WINDS MANOR, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1987.

Decided Dec. 23, 1987.

Charles O. Barto, Jr., Suzanne Rauer, Charles O. Barto, Jr. and Associates, Harrisburg, for appellant.

Bruce G. Baron, Asst. Counsel, Dept. of Public Welfare, LeRoy S. Zimmerman, Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

Fair Winds Manor, Inc. (Appellant) a privately owned skilled nursing and intermediate care facility, appeals a Commonwealth Court order 100 Pa.Cmwlth. 139, 514 A.2d 642, affirming an order of the Director, Office of Hearings and Appeals (Director) of the Pennsylvania Department of Public Welfare (DPW). The Director's order denied Appellant's exceptions to DPW audit findings that disallowed certain Medical Assistance reimbursements.[1] We granted

---

1. Administrative Appeals of DPW audit of Medical Assistance cost reports for fiscal years ending June 30, 1979; June 30, 1980; and June 30, 1981 were consolidated for hearing. Issues raised included the following:
   *Patient days which were reserved pending further documentation by the facility.
   *Disallowance of depreciation with respect to a Cadillac.

the Appellant's petition for allowance of appeal to review DPW's denial of a step-up basis for depreciation of leased facilities and DPW's audit protocol of offsetting interest income from working capital against capital interest expense.[2] For the reasons that follow, we affirm.

In 1958, Charles and Helena Brown acquired real estate for use as a nursing home. They also owned all of the stock of Fair Winds Manor, Inc., which has been the nursing home's service provider since 1964. In 1967 Charles and Helena Brown transferred title to the subject property from their own name to a partnership—Fair Winds Farm. Fair Winds Manor, Inc. in turn leased the property from Fair Winds Farm. The partners of Fair Winds Farm were Charles and Helena Brown and their three children Alfred, Nadine, and Zarah Brown Blair. The children were later each given a one-fifth interest in Fair Winds Manor, Inc. In 1972 Nadine Brown sold her one-fifth share in Fair Winds Manor, Inc. to her brother-in-law Kenneth Blair. Alfred Brown transferred his one-fifth interest in Fair Winds Manor, Inc. to Fair Winds Farm that same year.

On July 1, 1979 the real estate that had been transferred to Fair Winds Farm in 1967 was purchased by the newly formed Four Winds, Ltd.[3] Utilizing funds from their Four Winds, Ltd. partnership account(s), Kenneth and Zarah Brown Blair purchased the remaining sixty percent of Fair Winds Manor, Inc.'s outstanding stock in November, 1979,

*Disallowance with respect to unsubstantiated interest.
*Denial of a step-up in depreciation.
*Offset of interest income against capital interest expense.
The first three issues were settled by stipulation.

2. For the period at issue in the case at bar, the applicable version of the Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities (Manual) is found at 8 Pa.Bull. 2832–2838 (1978). The Manual originally appeared at 5 Pa.Bull. 2928–2934 (1975), and has been codified in its current amended form at 55 Pa.Code §§ 1181.201–1181.274.

3. The general partners of Four Winds Ltd. were Kenneth and Zarah Brown Blair and Alfred and Marlene Brown. Charles and Helena Brown were the limited partners. Fair Winds Farm continued to exist, maintaining ownership of other real estate.

thereby obtaining sole ownership of that corporation.[4] Fair Winds Manor, Inc. continued to lease the realty from Four Winds, Ltd.

During this period it was determined that alterations would have to be made to the existing structure of the facility in order to remedy Life Safety Code deficiencies. Kenneth Blair contacted the Nursing Home Loan Agency of the Commonwealth of Pennsylvania (Agency) to ascertain the availability of funds required for construction. The Agency required as a loan condition the personal guarantees of Four Winds, Ltd.'s general partners. Alfred and Marlene Brown would not personally guarantee the loan. Faced with this refusal, and thereby the certainty of discontinuing the facility's operation, Kenneth and Zarah Brown Blair purchased the interest of Alfred and Marlene Brown as well as Charles and Helena Brown in Four Winds, Ltd. on November 6, 1980. The result of this transaction was that Four Winds, Ltd. was dissolved and the subject property was titled in Kenneth and Zarah Brown Blair as tenants by the entirety. Consequently, Fair Winds Manor, Inc. now leased the realty from Kenneth and Zarah Brown Blair. The purchase of Four Winds, Ltd. also ensured that Fair Winds Manor, Inc. would receive the funds necessary to remedy Life Safety Code deficiencies from the Agency.[5]

## COST BASIS AND DEPRECIATION

DPW's field auditor disallowed Fair Winds Manor, Inc.'s claim on its 1981 medical assistance cost report for $21,935 in depreciation. This amount reflected the increased cost basis of the real estate purchased by the Blairs.[6] The basis of the field auditor's decision was that a determination of

4. The withdrawal of funds from their partnership accounts decreased the Blair's equity and participation in the profits from Four Winds Ltd. to eleven percent.

5. A $500,000 loan was received from the Agency of which $58,604 was designated by the Appellant's accountants as Working Capital.

6. The cost report reflected that the lease payments had been backed out and the depreciation and interest related to those assets were substituted. See also Manual Section IV(D)(13); 8 Pa.Bull. 2837 (1978).

the cost basis of assets, as provided by Manual Section IV(D)(9)(f) cannot recognize the re-valuation of an asset based on a related party purchase. 8 Pa.Bull. 2836 (1978). Manual Section IV(D)(9)(f) provides:

> The cost basis for depreciable assets of a facility purchased as an ongoing operation shall be the lesser of the purchase price or the fair market value based on the lesser of at least two bonafide [sic] appraisals at the time of the sale and less any straight line depreciation by the prior owner. *The sale must be an arm's length transaction consummated in the open market between nonrelated parties in a normal buyer-seller relationship.*

8 Pa.Bull. 2836 (1978) (emphasis added).

On appeal to DPW's Office of Hearings and Appeals, the Attorney Examiner stated that the partnership buy out must meet each and every requirement of the last sentence of paragraph (f) for the cost to be recognized for depreciation purposes. The Attorney Examiner determined that a normal buyer-seller relationship did not exist, therefore the sale assets could not be recognized for a step-up in the cost basis of the realty and a corresponding increase in depreciation allowance.[7] Commonwealth Court affirmed the order of DPW, finding the department's interpretation of Manual Section IV(D)(9)(f) to be in accord with the section's plain language.

Appellant argues that it is entitled to a stepped-up cost basis in the real estate and a corresponding increase in depreciation allowance because the Blairs acquired the partnership assets (real estate) as the result of bona fide arm's length negotiations. Appellant also contends that Commonwealth Court's and DPW's decisions misconstrue the intent and purpose of the Social Security Act which establishes the federal/state program of medical assistance. 42 U.S.C. § 1396a(a)(13)(A). The focus on subsection (f) of Manual Section IV(D)(9) is misplaced.

---

**7.** The Attorney Examiner declined to accept DPW's position that Manual Section IV(D)(13), 8 Pa.Bull. 2837 (1978), should be used to construe Manual Section IV(D)(9) so as to ascertain whether the parties are related.

In *Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 81, 422 A.2d 480, 482 (1980), we enunciated a two step analysis for review of an administrative agency's interpretation of its own regulations. This analysis provides that:

First, "[i]n construing administrative regulations, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " ... Second, the regulations "must be consistent with the statute under which they were promulgated."

In this case, DPW has interpreted its administrative regulation, Manual Section IV(D)(9)(f), as applicable to the Blair's acquisition of the partnership's real estate. For this subsection of the regulation to apply, however, the initial requirements of Manual Section IV(D)(9) must first be satisfied. Those requirements include:

**9. Depreciation allowance.** Depreciation on capital assets including assets for normal standby or emergency use *in which the facility is the record title holder* and which assets are used to provide covered services to Medical Assistance recipients, is an allowance cost subject to the following conditions:

8 Pa.Bull. 2836 (1978) (emphasis added). Thus, in order to claim depreciation on capital assets under this subsection not only must the asset be used to provide covered services to Medical Assistance recipients but the facility must also be the record title holder of the asset.[8]

■ Fair Winds Manor, Inc., while a skilled nursing and intermediate care facility, did not hold title to the physical plant and real estate it occupied. As of November 6, 1980, the record title holder of that depreciable capital asset was the Blairs as tenants by the entirety. Since one of the Manual Section IV(D)(9) requirements could not be met, the plain language of the regulation precludes application of

---

8. Facility is defined in Manual Section II as a skilled nursing or intermediate care facility or distinct part thereof in a hospital. 8 Pa.Bull. 2832 (1978).

subsection (f) regardless of whether or not the sale was in a normal buyer-seller relationship.[9]

Although we find DPW's application of Manual Section IV(D)(9)(f) to this case to be plainly erroneous based on the plain language of the regulation, and such an interpretation will not control to deny a step-up in cost basis in other cases, we affirm the order of Commonwealth Court on the alternative reasons stated.[10]

## OFFSET OF INVESTMENT INCOME

The second issue raised by Appellant is whether DPW properly offset interest income against interest on capital indebtedness for fiscal years 1979, 1980 and 1981. Appellant received interest income from working capital funds temporarily held in savings accounts. These accounts were used to accumulate funds in order to liquidate short term operating loans. Appellant argues that the interest income earned on the savings accounts should be applied to offset interest expense on short-term operating loans.

**9.** DPW's field auditor, instead of denying the entire depreciation allowance, merely adjusted the depreciation expense to what it would have been based on the original cost of the real estate. Such an adjustment could only be made if Manual Section IV(D)(13) applied. 8 Pa.Bull. 2837 (1978). Actual depreciation, interest, taxes and related property costs could be taken in lieu of rent only if the organization was related to the facility by common ownership of more than ten percent equity, control, etc. For fiscal years ending June 30, 1979 and June 30, 1980 when Four Winds Ltd. owned the property this adjustment was appropriate.

Based on how the Four Winds, Ltd. transaction was structured, i.e. Blair's joint ownership of the real estate, the lease payments for fiscal year ending June 30, 1981, would not appear to be an allowable cost. Manual Section IV(D)(14)—Rental of property and plant, 8 Pa.Bull. 2837 (1978), specifies that reasonable rental expense is an allowable cost for leasing of facilities from *nonrelated parties* in an *arm's length transaction*. By virtue of the fact that the Blairs were the owners of both Fair Winds Manor, Inc. and the subject realty, the facilities could not, it appears, be considered to be leased from a nonrelated party in an arm's length transaction so as to come within the regulation then in effect.

**10.** We do not feel constrained at this time to decide Appellant's corrollary argument that DPW's interpretation of Manual Section IV(D)(9)(f) effectively discourages participation in the Medical Assistance Program in contravention of the Social Security Act.

DPW interpreted the then existing regulation, Manual Section IV(D)(10)(e), as requiring that interest income first be offset against interest expense on *capital* indebtedness, with any remaining balance offset against interest expense on *current* indebtedness. Commonwealth Court found DPW's interpretation to be not plainly inconsistent with the wording of Manual Section IV(D)(10)(e) and therefore upheld DPW's policy as a valid interpretation of that regulation.

Manual Section IV(D)(10)(e) provides that:

e. Interest expense reduced by investment income, except when the investment income is derived from gifts or grants which are restricted by the donor and which are accounted for separately from other funds, will be recognized.

8 Pa.Bull. 2837 (1978).

Appellant notes that "investment income" is not defined in the regulation and claims that it should therefore be interpreted according to federal policies and guidelines that apply to Medicare and Medicaid.[11] Finding federal guidelines controlling, Appellant argues that a distinction is made between interest on current versus capital indebtedness which is carried over to investment income. HIM 15, Section 202.1, 1 Medicare and Medicaid Guide (CCH) ¶ 4913. Appellant interprets the federal guidelines to mandate that short term investment income be offset against interest on current indebtedness and long term investment income to be offset against capital indebtedness. Appellant misconstrues the applicable federal guidelines.

Investment income is defined in the Medicare Provider Reimbursement Manual as "... the aggregate net amount realized from dividends, interest, rental income, interest earned on temporary investment of withholding taxes, as well as all gains and losses." HIM 15, Section

11. Manual Section IV, 8 Pa.Bull. 2834 (1978) provides that "[i]n the absence of specific instructions or guidelines in this Manual, facilities will follow the guidelines and policies in the Medicare Provider Reimbursement Manual contained in HIM 15."

202.2, 1 Medicare and Medicaid Guide (CCH) ¶ 4920. The federal guidelines do not differentiate investment income on the basis of its term. Additionally, no guideline provisions mandate how investment income is to be offset against interest expense—whether for current indebtedness or capital indebtedness.

Appellant also asserts that DPW's policy interpretation is contrary to generally accepted accounting principles. No source citations are presented in support of this contention. Since the policies underlying applicable state regulations used to determine allowable cost reimbursement for skilled nursing and intermediate care facilities differ sharply from financial accounting requirements, the superficial appeal of this argument cannot sustain it. *Compare, American Automobile Association v. United States*, 367 U.S. 687, 692–93, 81 S.Ct. 1727, 1729–30, 6 L.Ed.2d 1109 (1961) (recognizing different treatment of income for tax purposes than by generally accepted accounting principles).

■ The final issue raised by Appellant is that DPW's policy interpretation improperly promulgated a regulation. Appellant's reference is to a DPW memorandum dated April 23, 1980 which interprets Manual Section IV(D)(10)(e) whereby investment income is offset first against interest expense on capital indebtedness.[12] We disagree. DPW's interpretation of the offset rule does not constitute adoption of a new substantive regulation in contravention of The Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, as amended 45 P.S. § 1102 *et seq.*, since an agency may formulate interpretations of general applicability without

12. Ironically, Fair Winds Manor, Inc., in an attempt to bolster its argument that interest income on the savings accounts should be applied to current indebtedness interest expense, appears to rely on the April 23, 1980 memorandum. Fair Winds Manor, Inc. claims that investments are defined by DPW as "permanent or long term securities with a value but which are normally not available for immediate withdrawal." Appellant's brief p. 36. Fair Winds Manor, Inc. has failed to either include a copy of the memorandum or alternatively properly cite the source of the quote. The result is that Fair Winds Manor, Inc. did not meet its burden of proof.

publishing such opinions.[13]  *Compare Cheshire Hospital v. New Hampshire–Vermont Hospitalization Service, Inc. d/b/a Blue Cross/Blue Shield of New Hampshire–Vermont,* 689 F.2d 1112 (1st Cir.1982) (Secretary's interpretation of offset rule does not constitute new substantive rule).

Because we find that the increased depreciation based on this sale of assets could not be recognized, and DPW properly interpreted the then existing regulation so as to require that interest income first be offset against interest expense on capital indebtedness, the order of Commonwealth Court is affirmed.

HUTCHINSON, Former Justice, did not participate in the consideration or decision of this case.

13.  The field auditor and Attorney Examiner both indicated that DPW's policy memorandum has been consistently applied over the years.