616 A.2d 204

**NOTTINGHAM VILLAGE, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1992.

Decided Oct. 19, 1992.

Petition for Allowance of Appeal Denied March 23, 1993.

Charles O. Barto, Jr., for petitioner.

Cynthia W. Williams, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Nottingham Village (Nottingham) appeals from a final order of the Acting Secretary of the Department of Public Welfare (DPW), that affirmed the decision of the Office of Hearings and Appeals' adoption of an Attorney Examiner's determination, denying in part and sustaining in part[1] Nottingham's

---

1. The portion of the Attorney Examiner's determination that was sustained concerned fiscal year 1984, and is not at issue in this appeal.

appeal from audit adjustments of Medical Assistance Program (Medicaid) reimbursement allowances. We affirm.

Nottingham is a nursing facility provider enrolled in Pennsylvania's Medical Assistance Program. As a member of this program, Nottingham undergoes DPW audits that examine, in part, reimbursable costs. Nottingham challenges DPW's disallowance of capital interest expense for the fiscal years 1985, 1986, and 1987.

Nottingham Health Care Services, Inc., Nottingham's owner, purchased the facility in May, 1981, at a cost of $2,498,-619.84, unadjusted for the prior owner's depreciation. In December 1984, DPW and Nottingham entered into a stipulation, agreeing that Nottingham's medical assistance cost basis, adjusted for prior owner's depreciation, equaled $2,174,627.00, plus $6,000.00 for vehicles. The parties agreed that the allowable depreciable basis would not exceed $2,180,627.00, with the excess to be disallowed.

DPW calculated Nottingham's excess financing by taking the capital financing total of $2,423,438 and subtracting the allowable depreciable basis (including the vehicle costs) of $2,180,627, which resulted in an excess financing amount of $242,811. DPW then divided the excess financing amount of $242,811 by the total financing amount of $2,423,438. This process resulted in the calculated excess percentage of 10.02%, which DPW applied to Nottingham's capital interest to determine the excess interest. This percentage is calculated once, in the year of acquisition, and is applied in each succeeding fiscal year until the total debt is completely repaid. This method resulted in the disallowance of excess interest in fiscal year 1985 of $22,884.00, in fiscal year 1986 of $17,799.00, and in fiscal year 1987 of $20,208.00.

■ Although Nottingham acknowledged DPW's right to disallow interest expense related to excess financing, it argued at the hearing before the Office of Hearings and Appeals that excess interest should be recomputed yearly, because as the average principal balance declines, so will the excess interest. The Office of Hearings and Appeals denied Nottingham's

appeal as it related to the calculation of excess interest. After granting Nottingham's request for reconsideration, the Acting Secretary of DPW affirmed the decision of the Office of Hearings and Appeals. Nottingham now appeals to this Court.[2]

■ When reviewing an agency's interpretation of its own regulations, the agency's interpretation may not be disturbed unless it is plainly erroneous or inconsistent with the regulation interpreted, and the interpretation must be consistent with the underlying policies or objectives of the underlying statutes. *Segal v. Department of Public Welfare*, 145 Pa.Commonwealth Ct. 385, 603 A.2d 668 (1992), *petition for allowance of appeal filed*, (No. 171 M.D. Allocatur Docket 1992, filed May 4, 1992) (citing *Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 422 A.2d 480 (1980)).

■ Nottingham first contends that DPW improperly disallowed interest expense on capital financing below the depreciation basis. The main thrust of its argument urges that DPW recompute the percentage of excess interest each year, so that it will be reimbursed completely for interest expense on capital debt once the actual debt is reduced to the depreciation basis.

Both DPW's regulations at 55 Pa.Code § 1181.260(g)[3] and the Medicare Provider Reimbursement Manual at Section 203 of HIM–15[4] indicate that necessary and proper interest on

2. Our scope of review is limited to a determination of whether the decision is supported by substantial evidence, is in accordance with the law, and whether any constitutional rights have been violated. *Grandview Health Homes, Inc. v. Department of Public Welfare*, 122 Pa.Commonwealth Ct. 356, 552 A.2d 720 (1988).

3. 55 Pa.Code § 1181.260(g) provides:
 Necessary interest on capital indebtedness applying to mortgages, bonds, notes or other securities on the property and plant of the facility will be recognized subject to the limitation of the amount recognized for depreciation purposes. The total value of mortgages, bonds, notes or other securities on which interest on capital indebtedness is allowed may not exceed the depreciation basis of the assets at § 1181.259(m), (n) and (o) (relating to depreciation allowance).

4. Section 203 of HIM–15 provides:

capital and current indebtedness is an allowable cost for Medicaid reimbursement, but that DPW may disallow reimbursement for excess interest where the facility's purchase price exceeds the cost basis adjusted for depreciation taken by the prior owner. *Segal.*

Nottingham offers a method, like the method suggested by the petitioners in *Segal,* that would progressively decrease the disallowed excess interest as the debt is retired, instead of DPW's one-time calculation computed at the time of acquisition and applied throughout the life of the loan. Nottingham's method, an alternative interpretation of DPW's regulations, is just that, an alternative interpretation. However, because DPW's method is not clearly inconsistent with the regulations, and because deference must be given to DPW's interpretation of its own regulations, we conclude that DPW's treatment of Nottingham's excess interest is not in error.

 Nottingham also argues that DPW's method of calculating excess interest violates the Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1602, formerly the Commonwealth Documents Law (Law), which prohibits DPW from "creating reimbursement standards which have no support in the regulations, or from amending the regulations through unpublished policy directives." *Suburban Manor/Highland Hall Care Center v. Department of Public Welfare,* 146 Pa.Commonwealth Ct. 129, 136, 604 A.2d 1185, 1188 (1992), *petition for allowance of appeal filed,* (No. 161 W.D. Allocatur Docket 1992, filed April 1, 1992) (emphasis deleted).

"[S]ince an agency may formulate interpretations of general applicability without publishing such opinions," *Fair Winds Manor v. Department of Public Welfare,* 517 Pa. 106, 114–15, 535 A.2d 42, 46 (1987), the *Suburban* court held that DPW's methods, governing reimbursement of capital costs, did not

INTEREST ON LOANS IN EXCESS OF ASSET VALUE, ACQUISITION AFTER JULY 1970

A. Where a loan is obtained to finance the purchase of a facility or a tangible asset that is acquired after July 1970, and the purchase price exceeds the ... cost basis, ... interest expense on that portion of the loan used to finance the excess is not considered reasonably related to patient care and is not allowable.

create or amend any regulation, but were valid interpretations of substantive regulations. DPW's method of calculating the amount of excess interest that it disallows is a part of this same regulatory scheme. We conclude, as did the *Suburban* court, that the calculation method employed by DPW does not violate the Law.

Accordingly, we affirm.

## ORDER

AND NOW, this 19th day of October, 1992, the order of the Department of Public Welfare in the above-captioned matter is hereby affirmed.