ASSOCIACION DE PUERTOR-RIQUENOS EN MARCHA, INC., Petitioner

v.

DEPARTMENT OF HEALTH, DIVISION OF DRUG AND ALCOHOL PROGRAM LICENSURE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 2, 2007.

Decided June 7, 2007.

Publication Ordered Aug. 21, 2007.

Joseph R. Viola, Philadelphia, for petitioner.

Grace R. Schuyler, Sr. Counsel, Harrisburg, for respondent.

BEFORE: JAMES GARDNER COLINS, Judge, ROBERT SIMPSON, Judge, and JAMES R. KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

Associacion De Puertorriquenos En Marcha, Inc. (APM) petitions for review of an order of the Deputy Secretary for Administration of the Pennsylvania Depart-

ment of Health (DOH) that revoked its license to operate an outpatient drug and alcohol treatment facility. APM asserts DOH abused its discretion in revoking its license on the grounds it violated four regulatory requirements for drug and alcohol treatment facilities. As DOH's determination is supported by substantial evidence and in accordance with applicable law, we affirm.

APM is a drug and alcohol treatment facility licensed by DOH, located at 2143 North Sixth Street in the City of Philadelphia. DOH's Department of Drug and Alcohol Program Licensure issued APM a license to provide outpatient treatment activities in September 1990.

This case originated in February 2005 when DOH filed a Petition to Revoke APM's license to operate its treatment facility. In its petition, DOH alleged it conducted a licensing visit at the facility in July 2001 and found numerous regulatory deficiencies. It further alleged it found similar deficiencies during follow-up visits in 2002, 2003 and 2004. Based on information obtained during these visits, DOH alleged APM violated DOH regulations by failing to: provide documentation indicating staff members complied with applicable training requirements, see 28 Pa.Code § 704.11(c)(1); maintain an adequate recordkeeping system for client records, see 28 Pa.Code § 709.31(b); maintain appropriate client treatment plans, see 28 Pa.Code § 709.92(a)(1), (3); and, maintain complete client records, including "after-care" plans for clients. See 28 Pa.Code § 709.93(a)(9). APM filed an answer to the Petition to Revoke.

Prior to a scheduled hearing, the parties executed a stipulation of facts in which APM agreed it was in violation of the above-referenced regulatory requirements prior to June 2004. Additionally, in April 2004, DOH and APM reached a settlement

agreement relative to the above-referenced regulatory deficiencies. The settlement agreement states, in relevant part:

[A] survey will be conducted at [APM's] facility within the next 60 days. If there are substantive deficiencies identified during that survey, another survey will be conducted. If the facility is found to be deficiency free, APM shall receive a full license for its program. If, however, there are deficiencies identified during the second survey, DOH will move to schedule a hearing in this matter and proceed with [its] Order to Show Cause against APM.

DOH Adj., Finding of Fact (F.F.) No. 15.

Pursuant to the settlement agreement, DOH conducted an announced licensure inspection in June 2004. Three months before the inspection, APM's Director, Dr. Mark Kirszner (Director) issued a memo to his administrative assistant detailing the information that should be included in APM's data collection system to satisfy DOH's regulatory requirements. See F.F. No. 18.

In June 2004, DOH, through its drug and alcohol licensing specialists, John Todd Bender and Kristine Caroppuli (DOH Inspectors), conducted an announced licensure inspection at APM. During the inspection, a review of APM's personnel files revealed three staff members, including Director, did not have certifications indicating they completed, among other things, a required HIV/AIDS training course.

Additionally, during the June 2004 inspection, APM did not have a data collection and recordkeeping system in place that could effectively retrieve the data necessary to evaluate the facility's performance, as more fully discussed below.

The June 2004 inspection also revealed deficiencies in the "treatment plans" for

several APM clients. "A treatment plan is the essential document for the treatment of drug and alcohol clients; it is a step-by-step plan developed between the counselor and the client to assist the client achieve his/her identified goals and develop the skills necessary to maintain abstinence." F.F. No. 31. APM's treatment plans for four clients lacked measurable short-term and long-term goals, and the stated goals were couched in vague terms that provided no measurable criteria to assist clients in achieving these goals.

DOH Inspectors also found deficiencies in the "aftercare plans" for several clients. "An aftercare plan is a plan for clients to follow after they leave formal treatment; it is the client's individual plan for the future, including identification of the client's personal goals and objectives." F.F. No. 40. In several instances, the aftercare plans for clients did not include goals with time frames for their completion or a process for the clients to re-enter the program, if necessary.

At the conclusion of the June 2004 licensure inspection, DOH Inspectors met with Director to review all areas of noncompliance. In addition, DOH Inspectors provided Director a copy of DOH's regulations and interpretive guidelines to assist him and his staff in correcting the deficiencies. DOH Inspectors specifically instructed Director to read the guidelines as it was apparent he had not previously done so. Additionally, at the recommendation of DOH Inspectors, APM subsequently developed planning goals and objectives for the facility.

Pursuant to the parties' settlement agreement, DOH conducted an unannounced follow-up inspection in September 2004 to determine if APM brought identified deficiencies into compliance. During the follow-up inspection, APM produced no documentation to show Director completed the required HIV/AIDS training course. In addition, APM's data collection and recordkeeping system did not allow for accurate retrieval of data to measure the project's performance, and there were inconsistencies in APM's data collection and recordkeeping system. For example, APM's recordkeeping system continued to identify several clients as "active" even though APM previously discharged these clients. Additionally, APM did not improve its client treatment plans, and the aftercare plans for several clients remained deficient.

Ultimately, DOH determined it was authorized under 28 Pa.Code § 709.17 to revoke a license for violation of, or noncompliance with, the regulations applicable to drug and alcohol rehabilitation facilities. It further determined Section 709.17 authorized it to revoke a license for failure to comply with a DOH-approved plan of correction and for continued noncompliance in disregard of applicable regulations. Ultimately, DOH revoked APM's license based on its noncompliance with the regulations for licensure of drug and alcohol treatment facilities contained in 28 Pa.Code §§ 704.11(c)(1), 709.31(b), 709.92(a)(1), (3), and 709.93(a)(9). DOH stated:

The record demonstrates that despite several opportunities to bring its program into compliance with regulatory standards, APM has been unable to do so. The parties stipulated from the outset that prior to June 2004, APM was in violation of the same regulatory provisions at issue in this proceeding. In settlement of those violations, the parties agreed that a survey (inspection) would be conducted at the facility within 60 days. That survey occurred on June 14, 15, and 16, 2004 and identified 38 deficiencies.

Under the terms of the settlement agreement, if substantive deficiencies

were identified during the first survey, another survey would be conducted. That survey occurred on September 13 and 14, 2004 and identified the deficiencies discussed herein.

APM has demonstrated through the testimony of [its Director,] [a staff supervisor] and through the deficiencies identified in its client files, personnel files and data collection and recordkeeping system during both the June and September 2004 inspections, a continued inability to operate an outpatient drug and alcohol facility.

[DOH] is authorized under 28 Pa.Code § 709.17 to revoke a license for violation of or noncompliance with the standards for licensure of freestanding treatment facilities and for continued noncompliance with such requirements. Under the facts presented, revocation of APM's license is an appropriate sanction.

DOH Adj. at 33–34.[1] APM appealed to this Court.

At the outset, we note, pursuant to 28 Pa.Code § 709.17:

(a) [DOH] may revoke ... a license for any of the following reasons:

(1) Failure to comply with a directive issued by [DOH].

(2) Violation of, or noncompliance with, [Chapter 709].

(3) Failure to comply with a plan of correction approved by [DOH], unless [DOH] approves an extension or modification of the plan of correction.

\* \* \*

(9) Continued noncompliance in disregard of this part.

28 Pa.Code § 709.17(a)(1)-(3), (9).

On appeal,[2] APM asserts DOH abused its discretion in revoking its license to operate its drug and alcohol treatment facility. Specifically, it asserts DOH abused its discretion in determining: its data collection and recordkeeping system was deficient; its client treatment plans were inadequate; the aftercare plans for its clients were insufficient; and, its Director lacked the requisite training.[3]

1. Despite revoking APM's license to operate, DOH's order immediately stayed the revocation for 180 days subject to several conditions. Essentially, these conditions required APM to bring its facility into compliance with the regulations at issue and provide DOH written evidence demonstrating compliance within 180 days. DOH's order also stated:

In the event [APM] timely appeals this Order and wishes to subsequently seek reconsideration of this Order upon compliance with the conditions above, [APM] shall be responsible for submitting any motions required for the Commonwealth Court to relinquish jurisdiction of the matter for purposes of reconsideration by the undersigned. The undersigned will not entertain a motion for reconsideration without an order from the Commonwealth Court indicating jurisdiction has been released for reconsideration purposes.

Reproduced Record (R.R.) at 1155a. APM subsequently filed an application for a stay or supersedeas of DOH's order in this Court pending disposition of its appeal. We denied the application "without prejudice to reapply directly to [this] Court in the event that [DOH] revokes [APM's] license following the expiration of the 180–day stay granted by [DOH]." Cmwlth. Ct. Order of 12/7/06. About a month later, APM filed a motion for remand to permit DOH to reconsider its revocation order based on APM's attempts to comply with the specified conditions. This Court denied the motion.

2. We are limited to determining whether constitutional rights were violated, errors of law were committed or whether necessary findings of fact were supported by substantial evidence. *Giant Food Stores, LLC v. Dep't of Health,* 808 A.2d 299 (Pa.Cmwlth.2002).

3. As a preliminary matter, we address APM's Motion to Strike DOH's Brief for Failure to Comply with the Rules of Appellate Procedure. APM asserts DOH's Brief violates the

## I. Data Collection/Recordkeeping Systems

■ APM asserts DOH abused its discretion in revoking its license based on its purported violation of 28 Pa.Code § 709.31(b), which states (with emphasis added):

§ 709.31. Uniform Data Collection System.

\* \* \*

(b) A data collection and recordkeeping system shall be developed that *allows for the efficient retrieval of data needed to measure the project's* [4] *performance in relationship to its stated goals and objectives.*

28 Pa.Code § 709.31(b).

APM argues, contrary to DOH's determination, it did not violate this regulation. Specifically, it asserts DOH erred in determining "isolated inconsistencies" produced by its new computer database rendered it unable to "measure its own performance in relationship to its stated goals and objectives."

In analyzing this issue, based on the testimony of DOH Inspectors, DOH first noted a data collection and recordkeeping system is used to identify active and inactive clients. F.F. No. 26; R.R. at 388a–89a. It allows DOH and the facility to determine the number of clients receiving treatment at a facility at a given time, and it provides a means by which DOH and the facility can identify particular clients on each counselor's caseload. *Id.*

DOH determined, during the June 2004 inspection, APM did not have a system in place that could effectively retrieve data needed to measure the project's performance as required by 28 Pa.Code § 709.31(b). F.F. No. 27; R.R. at 390a–91. In support, DOH determined APM personnel needed approximately 45 minutes to retrieve client records requested by DOH Inspectors. F.F. No. 29; R.R. at 304a. DOH further determined during the June 2004 inspection DOH Inspectors had a difficult time determining the number of active clients versus the number of clients discharged. F.F. No. 28; R.R. at 391a, 395a. In fact, APM's recordkeeping system identified several clients as active when they were actually discharged from the facility. *Id.*

Of further note, DOH determined APM did not correct these deficiencies as of the September 2004 inspection. F.F. No. 48; R.R. at 502a. Specifically, when DOH Inspectors requested a list of clients from which to select client charts during the September 2004 inspection, APM's system identified two clients as having similar names and identical social security numbers, with different dates of birth and dates of admission. F.F. No. 49; R.R. at 310a–12a. Thus, DOH Inspectors were unable to determine if the client information listed related to the same individual or two different individuals. *Id.* Additionally, APM's recordkeeping system continued to identify clients as active when, in fact,

---

Rules of Appellate Procedure because it repeatedly references facts outside the certified record, and it includes, as appendices, documents not part of the certified record. Upon review, we deny APM's motion to strike DOH's Brief; however, we will not consider the documents appended to DOH's Brief that are not part of the certified record or any references to those documents or other facts not of record. *See* Pa. R.A.P.1921; *Kochan v.*

*Dep't of Transp., Bureau of Driver Licensing,* 768 A.2d 1186 (Pa.Cmwlth.2001) (only items which are part of the certified record may be considered on appeal).

4. "Project" is defined as "[t]he public or private organization responsible for the administration and delivery of drug or alcohol services, or both, through one or more facilities." 28 Pa.Code § 701.1.

APM discharged these clients. F.F. Nos. 50–51; R.R. at 490a, 1006a–08a. Clearly, DOH's determinations are supported by substantial evidence.

Moreover, the record reveals that, in March 2004, in preparation for the June 2004 inspection, Director issued a memo to his administrative assistant detailing the information that should be included in APM's data retrieval system to satisfy DOH's requirements. *See* DOH Adj. at 23; F.F. No. 15; R.R. at 1004a. "Thus, APM was well aware of the importance of being able to generate an accurate listing of active or discharged [clients]. Notwithstanding, during both the June 2004 and September 2004 inspections, deficiencies were identified by [DOH] with APM's data collection and recordkeeping system." DOH Adj. at 23.

Additionally, APM's Director conceded APM's recordkeeping system contained inconsistencies during the two DOH inspections. R.R. at 488a–89a, 502a. He attributed these inconsistencies to the fact that APM staff had difficulty learning the database's coding system. R.R. at 501a–02a. Further, when asked how APM could possibly use its data retrieval system to "measure its performance" in relation to its stated goals of expanding its capacity from 80 to 120 clients, Director did not offer a clear response. R.R. at 500a–02a.

In short, there is ample record support for DOH's determination that APM violated 28 Pa.Code 709.31(b) because its database and recordkeeping system did not allow for the efficient retrieval of data needed to measure APM's performance with regard to its stated goals and objectives in providing drug and alcohol treatment services.

## II. Client Treatment Plans

APM next argues DOH abused its discretion in determining it violated 28 Pa. Code § 709.92(a)(1) and (3), which state:

§ 709.92. Treatment and rehabilitation services.

(a) An individual treatment and rehabilitation plan shall be developed with a client. This plan shall include, but not be limited to, written documentation of:

> (1) Short and long-term goals for treatment as formulated by both staff and client.

* * *

(3) Proposed type of support service.

28 Pa.Code § 709.92(a)(1), (3).

In analyzing this issue, DOH first determined, based on the testimony of DOH Inspectors, "[a] treatment plan is the essential document for the treatment of drug and alcohol clients; it is a step-by-step plan developed between the counselor and the client to assist the client achieve his/her identified goals and develop the skills necessary to maintain abstinence." F.F. No. 31; R.R. at 406a–07a. DOH determined the treatment plans reviewed by DOH Inspectors during the June 2004 inspection for four clients did not include measurable short and long term goals, and the stated goals were couched in general, vague terms that provided no measurable criteria to assist a client in achieving a stated goal. F.F. No. 32; R.R. at 314a; 321a–28a; 401a–10a; 770a.

By way of example, the treatment plan for one client with a crack cocaine dependency problem stated the client's short-term goal was merely to "[d]evelop ability to stay away from addictive substances." F.F. No. 33; R.R. at 1009a. Based on the testimony of DOH Inspectors, DOH determined there was no "measurability" to this goal because it did not explain the steps in the process necessary to achieve the goal. DOH Adj. at 26–27; R.R. at 402a–03a.

Additionally, the short-term goal in the treatment plan for another client was to "stay drug-free for the next 60 days." R.R. at 1027a. DOH determined, however, the treatment plan did not indicate what the counselor would do for the client or what skills or abilities the counselor would assist the client in obtaining to help him stay drug-free. DOH Adj. at 27; R.R. at 322a–23a. Also, during the June 2004 inspection, DOH Inspectors found *no* treatment plan existed for one client who received treatment between February and June 2004. F.F. No. 38; R.R. at 323a–24a.

DOH further determined the client treatment plans reviewed during the September 2004 inspection contained similar general and vague information; thus, APM did not improve its client treatment plans as of the follow-up inspection. F.F. No. 52; R.R. at 328a. In fact, the short and long term goals for several clients did not include measurable criteria to assist the clients in achieving their goals. F.F. Nos. 53–55, 57–59; R.R. at 332a–33a. For example, one client's short-term goal stated the client would "use anger management technique 75 when upset." DOH Adj. at 27; R.R. at 1035a. DOH determined this statement lacked measurability because it was unclear what the "75" figure represented, what specific anger management techniques would be used, and/or what steps would be taken to achieve this goal. DOH Adj. at 27. Additionally, the treatment plan for another client was not completed timely, contained no measurable short and long term goals and failed to include any proposed support services. F.F. No. 59; R.R. at 1034a.

Ultimately, DOH concluded, "[t]he testimony of [DOH Inspectors] in conjunction with the record as a whole clearly supports [DOH's] determination that the treatment plans for clients of APM were not in compliance with 28 Pa.Code § 709.92(a)(1) and

(3) during the June 2004 and September 2004 inspections." DOH Adj. at 31. Based on our review of the record, we discern no error in this determination.

Nevertheless, APM asserts DOH erred in determining it violated these provisions on the grounds the short and long term goals in its client treatment plans lacked "measurability." APM maintains the "measurability" criterion is not expressed in any DOH regulation, but rather is set forth solely in DOH's non-binding "interpretive guidelines," which do not have the force of a regulation.

With regard to the interpretive guidelines utilized by DOH in evaluating drug and alcohol treatment facilities, DOH determined:

7. Commencing in 1986, interpretative guidelines were developed by [DOH] for each set of regulations relating to drug and alcohol facilities and services. (N.T. 9/14/05, pgs. 118–124; DOH Exhibits H, I, J and K)

8. The purpose of the interpretative guidelines is to assist [DOH] staff and drug and alcohol facility staff in understanding and becoming compliant with regulations relating to drug and alcohol facilities and services. (N.T. 9/14/05, pgs.118—121)

9. When the interpretative guidelines were first developed in April 1986, a mass mailing of the guidelines was sent to every licensed facility and to every new program that applied for licensure thereafter. (N.T. 9/14/05, p. 122)

10. Interpretative guidelines are also provided to drug and alcohol treatment facilities and staff during licensure inspections. (N.T. 9/14/05, p. 122)

F.F. Nos. 7–10. As to the effect of these interpretive guidelines, DOH's adjudication also states:

[DOH] *agrees* that its interpretive guidelines cannot amend a published regulation. Cheryl Williams, Division of Drug and Alcohol Program Licensure Director ... testified that the interpretive guidelines were first developed when the regulations were published in April 1986 and later revised in April 2003. When [DOH] developed the guidelines, [DOH] hoped to achieve a document that would detail the regulations and the interpretive guidelines in one document so that everyone—[DOH] staff as well as drug and alcohol facility staff—would know what is required to demonstrate compliance with the regulations.

According to Williams, the guidelines only *clarify* the regulations. The guidelines serve as guidance to APM and all drug and alcohol facilities, as to what [DOH] will be examining during its inspections, how it will apply and enforce its regulations and what licensees can do to satisfy the regulatory requirements.

DOH Adj. at 29 (emphasis in original) (footnote omitted).

As for the specific interpretive guidelines at issue here, with regard to subsection (1) of 28 Pa.Code § 709.92(a) (short and long term treatment goals), DOH's interpretive guidelines, states *"[g]oals should be realistic and stated in terms of measurable criteria."* R.R. at 895a (emphasis in original). As to subsection (3) (proposed type of support services), the interpretive guidelines state *"[t]hese services may include medical, psychiatric or psychological services, economic, legal, AA, NA, etc."* R.R. at 896a (emphasis in original).

Notably, in *Logsdon v. Department of Education*, 671 A.2d 302 (Pa.Cmwlth. 1996), this Court explained:

An administrative agency has wide discretion when establishing rules, regulations and standards, and also in performance of its administrative duties and functions. A reviewing court cannot overturn an agency's exercise of its discretion absent proof of fraud, bad faith or a blatant abuse of discretion. *Also, pursuant to 1 Pa.Code § 1.4, an administrative agency may issue "guidelines" interpreting regulations and announcing the policies it intends to implement.*

*Id.* at 305 (citations and quotations omitted) (emphasis added). Of particular import here, Title 1 ("General Provisions"), Section 1.4 of the Pennsylvania Code defines a "guideline" as:

A document, other than an adjudication, interpretation or regulation, which announces the policy an agency intends to implement in future rulemakings, adjudications or which will otherwise guide the agency in the exercise of administrative discretion. The document may not amend, repeal or suspend a published regulation or otherwise effectively circumscribe administrative choice, but shall establish a framework within which an agency exercises administrative discretion. The term includes, but is not limited to:

(i) Plans for agency operation and administration which establish important policies to be utilized in the future exercise of administrative discretion.

\* \* \*

(iii) Announcements of principles and standards to be applied in future adjudications.

1 Pa.Code § 1.4.

Additionally, our Supreme Court holds that Commonwealth agency rules that merely interpret existing regulations may be formulated and applied without the formal rulemaking procedures set forth in the

Commonwealth Documents Law.[5] *Fair Winds Manor v. Dep't of Pub. Welfare,* 517 Pa. 106, 535 A.2d 42 (1987).

In determining reliance on interpretive guidelines was permissible with regard to the evaluation of APM's client treatment plans, DOH explained:

> [DOH's] interpretive rule for the requirement that an individual treatment plan include short and long-term goals *simply clarifies the regulatory language so that drug and alcohol facilities recognize the clinically appropriate components of a treatment plan. The guidance does not amend the regulations.* On the contrary, as [DOH] aptly states: *Common sense and good clinical practice dictate that a treatment plan that does not include realistic and measurable goals would be useless for the treatment of addicts and would not allow the progress of the ongoing treatment to be gauged. If the stated goals are not realistic and measurable, then they may as well not exist because the treatment plan would not be effective. In other words, the inclusion of realistic and measurable short and long-term goals determines whether a treatment plan includes goals at all.*

DOH Adj. at 30 (citation omitted) (emphasis added). We discern no error in this analysis.

### III. Client Records—Aftercare Plans

APM further maintains DOH abused its discretion in revoking its license on the ground it violated 28 Pa.Code § 709.93(a)(9), which states:

> § 709.93. Client records.
>
> (a) There shall be a complete client record on an individual which includes information relative to the client's involvement with the project. This shall

include, but not be limited to, the following:

\* \* \* \* \* \*

> (9) Aftercare plan, if applicable.

28 Pa.Code § 709.93(a)(9).

APM argues DOH erred in determining it violated this provision because the aftercare plans for three of its clients lacked "time frames," "goals" or descriptions of the "re-entry process." It asserts those criteria are not expressed in any DOH regulation, but rather only in DOH's interpretive guidelines. APM further contends a review of its client treatment records reveal DOH's accusations are specious.

DOH regulations define an "aftercare plan" as "[a] plan for clients to follow after they leave formal treatment. It is the client's individual plan for the future, *including an identification of the client's personal goals and objectives.*" 28 Pa. Code § 701.1 (emphasis added). Thus, contrary to APM's assertions, DOH regulations specify that an aftercare plan *is required to contain "goals" and "objectives" for a client.*

Moreover, DOH's interpretive guidelines explain an aftercare plan is:

> *A plan for clients to follow after they leave formal treatment. It is the client's individual plan for the future, including an identification of the client's personal goals and objectives. It should focus on sustaining and building on the progress achieved during treatment and should have input from all significant persons, especially the client. It is recommended that the plan should include:*
>
> • *The client's future goals with time frames.*

---

- *A description of the services that can be provided by the project after discharge, if necessary.*
- *The method and frequency of continuing contact to provide client support.*
- *Criteria for re-entry into the project.*
- *Provision for the periodic re-evaluation and termination of the plan.*

R.R. at 898a–99a. As with the interpretive rules for client treatment plans discussed above, DOH could rely on these guidelines in interpreting 28 Pa.Code § 709.93(a)(9). *Fair Winds Manor; Logsdon.*

Here, DOH determined during the June 2004 inspection, DOH Inspectors found the aftercare treatment plans for four clients did not include goals with time frames for their completion or a process for a client to re-enter the program, if needed. F.F. No. 42. DOH further determined, during the September 2004 follow-up inspection, DOH Inspectors found the aftercare plans for three clients did not contain this same information. F.F. No. 60. DOH also determined that during the September 2004 follow-up inspection, DOH Inspectors found the *personal goals* and objectives for two clients were virtually identical. F.F. No. 62. Again, our review of the record reveals adequate support these determinations. *See* R.R. at 335a–39a, 411a–14a, 701a–02a. Moreover, we discern no error in DOH's determination that APM's aftercare plans for clients were continually deficient because they did not include goals and objectives with time frames for their completion or information on the re-entry process.

In short, similar to the deficiencies in the short and long term goals for the client treatment plans discussed above, an aftercare plan that lacks goals with time frames and a description of the re-entry process is not helpful to a client because it provides no framework for a client to follow after discharge. DOH Adj. at 33.

Moreover, a review of APM's own aftercare forms, *see, e.g.,* R.R. at 1049a–50a, reveal APM was aware of the information necessary to satisfy the criteria expressed in DOH's interpretive guidelines. More specifically, these forms require APM staff to, among other things, "Identify Client's Personal Goals and Objectives with Time Frames" and state the "Criteria for Re-Entry Consideration Into the Project." R.R. at 1049a. Thus, as stated by DOH, "APM's argument that [DOH's] guidelines only *recommend* that aftercare plans include goals, time frames, and a re-entry process is flawed because APM's own forms require this." DOH Adj. at 33 (emphasis in original).

## IV. Staff Training Requirements

■ APM also argues DOH abused its discretion in revoking its license on the ground that, as of September 2004, its Director lacked a certificate of completion of a required six-hour HIV/AIDS course as required by 28 Pa.Code § 704.11(c)(1).

The regulation at issue states, in relevant part:

§ 704.11. Staff development program.

\* \* \*

(c) *General training requirements.*
(1) *Staff persons ... shall receive a minimum of 6 hours of HIV/AIDS ... training using a Department approved curriculum. ...*

28 Pa.Code § 704.11(c)(1) (emphasis added).

Here, DOH found, during the June 2004 licensure inspection, the personnel files for APM staff revealed that Director, as well as two other APM staff members, did not have the required documentation showing they completed the HIV/AIDS training re-

quired by 28 Pa.Code § 704.11(c)(1). F.F. No. 25. In addition, DOH found, during the September 2004 follow-up inspection, APM produced *no documentation to show* Director received the required HIV/AIDS training. F.F. No. 47. These findings are supported by substantial evidence.

 In light of our discussion of the three preceding issues, it is not necessary to address this issue at length. It is sufficient for current purposes to note that substantial evidence supports DOH's determination. R.R. at 287a–90a, 293a, 297a–300a, 761a, 846a, 859a. Also, APM's various arguments that strict compliance by Director with the regulation is not necessary lack merit.[6]

## V. Conclusion

In sum, the record adequately supports DOH's determinations that APM consistently failed to bring its program into compliance with regulations concerning: staff training requirements, data collection and recordkeeping systems for client records, client treatment plans, and client records, including aftercare plans, despite several opportunities to do so. DOH possesses authority to revoke a license for violation of or noncompliance with these regulatory standards or for continued noncompliance with DOH regulations. *See* 28 Pa.Code § 709.17(a)(1), (9). We discern no error from DOH's decision to revoke APM's license based on the facility's violation of DOH regulations and its continued noncompliance with these regulatory requirements. *Id.; Cf. Integrated Behavioral Health Servs. v. Dep't of Pub. Welfare,* 871 A.2d 296 (Pa.Cmwlth.2005) (repeated violations of Department of Public Welfare regulations warranted revocation of facility's license to operate outpatient psychiatric clinic).

This Court is aware of the valuable services afforded at facilities such as APM. However, APM's continued noncompliance with DOH regulations impairs its ability to work with DOH. Because APM's argu-

---

**6.** APM argues Section 704.11(c)(1), which sets forth this training requirement, applies only to facility "staff and volunteers," not project directors. Thus, APM maintains, its Director was not subject to this regulatory training requirement.

"In construing administrative regulations, the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Popowsky v. Pa. Pub. Util. Comm'n,* 589 Pa. 605, 629, 910 A.2d 38, 52 (2006). *See also Eagle Envtl. II, L.P. v. Dep't of Envtl. Prot.,* 584 Pa. 494, 884 A.2d 867 (2005). Here, in interpreting Section 704.11, DOH stated a review of the regulation in its entirety reveals that 704.11(c) sets forth "general training requirements" for all "staff persons." As noted by DOH, the regulations broadly define "project staff" as "[p]ersons performing the activities necessary for the operation of the project or facility." 28 Pa.Code § 701.1. We discern no error in DOH's determination that APM's Director qualifies as a person "performing the activi-

ties necessary for the operation of the facility." *Id.*

APM further contends its Director possesses a doctorate in social work from the University of Pennsylvania and participates regularly in professional education programs concerning HIV/AIDS in the field of drug and alcohol abuse. Thus, APM asserts, even if the training requirement applies to Director, it substantially complied with the regulation.

This Court holds *"[s]trict compliance with the requirements* of statute and *of the regulations duly promulgated* in accordance therewith *is mandatory; substantial compliance is insufficient." State Coll. Manor, Ltd. v. Dep't of Pub. Welfare,* 92 Pa.Cmwlth. 89, 498 A.2d 996, 999 (1985) (emphasis added); *see also Ashton Hall, Inc. v. Dep't of Pub. Welfare,* 743 A.2d 529 (Pa.Cmwlth.1999). Here, APM failed to comply with Section 704.11(c)(1) because Director did not complete the required HIV/AIDS training. Contrary to APM's assertions, substantial compliance with this substantive regulation is simply insufficient. *Ashton Hall; State Coll. Manor.*

ments lack merit, we affirm the order of DOH.

## ORDER

AND NOW, this 7th day of June, 2007, the order of the Department of Health, Division of Drug and Alcohol Program Licensure is **AFFIRMED**. Petitioner Asso-ciacion De Puertorriquenos En Marcha, Inc's Motion to Strike Respondent Department of Health, Division of Drug and Alcohol Program Licensure's Brief for Failure to Comply with the Rules of Appellate Procedure is **DENIED.**