683 A.2d 1242

**Dennis DONNELLY**

**v.**

**Deborah BAUER, Appellant.**

**Francis and Kathy HAVEL**

**v.**

**Lorraine McCARRY, Appellant.**

Superior Court of Pennsylvania.

Argued May 6, 1996.

Filed Oct. 29, 1996.

Joseph M. Hankins and Wayne A. Schaible, Philadelphia, for appellants.

Richard Golomb, Philadelphia, and James R. Ronca, Harrisburg, for appellees.

Before McEWEN, President Judge, CAVANAUGH and CIRILLO, President Judges Emeritus, and DEL SOLE, BECK, POPOVICH, FORD ELLIOTT, SAYLOR and EAKIN, JJ.

CIRILLO, President Judge Emeritus:

In this appeal we are asked to determine the adequacy of limited tort waiver forms issued pursuant to Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1701 *et seq.* The two consolidated cases before us are representative cases from a group of fifty-seven. In those fifty-seven cases, plaintiffs filed motions *in limine* seeking to preclude defendants from raising the limited tort waiver defense. In signing the limited tort waiver documents, plaintiffs restricted their rights to financial compensation for non-economic damages as a result of injuries caused by other drivers.

The Honorable Eugene E.J. Maier presided over these cases. Judge Maier granted the plaintiffs' motions and precluded defendants from raising the limited tort waiver defense. Defendants appealed. Two representative cases were certified by the trial court for interlocutory review. This court granted permission to appeal, *see* Pa.R.A.P. 313, 1311, and consolidated the two cases herein for en banc review.[1] *See* Pa.R.A.P. 513.

Appellants raise the following issues for our review:

1. When a personal injury claimant in an automobile accident case voluntarily selected the limited tort option by signing a notice form when he first applied for a new policy after July 1, 1990, and benefited from the lower limited tort premium, is the individual defendant in a subsequent automobile accident case precluded from raising the limited tort defense merely because the form did not state the premium differential between the full and limited tort options?

2. Where a personal injury claimant in an automobile accident case voluntarily selected the limited tort option by signing an Assigned Risk Plan Form PA–1000 when he applied for a new automobile insurance policy after July 1,

---

1. Amicus Curiae briefs have been filed by the Pennsylvania Insurance Department, the Insurance Federation of Pennsylvania, the National Association of Independent Insurers, the Pennsylvania Defense Institute, the Pennsylvania Assigned Risk Plan (in case no. 691 Phila. 1996–*Donnelly v. Bauer*), and the Pennsylvania Trial Lawyers Association.

1990, and benefited from the lower limited tort premium, is the defendant in an automobile accident case precluded from raising the limited tort defense merely because Form PA–1000 did not state the premium differential between the full and limited tort options?

3. Did the lower court have jurisdiction over motions to invalidate tort selections forms approved by the Insurance Department and Commonwealth Court, when claimants failed to seek relief in the agency or in Commonwealth Court, and the insurer and Assigned Risk Plan were not parties?

In enacting the 1990 amendments[2] to the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1701 *et seq.*, [hereinafter Act 6], the General Assembly sought to temper the rising cost of automobile insurance. As part of this plan, the legislature established rate reductions linked to the election of tort options. *See* 75 Pa.C.S.A. §§ 1705 and 1799.7(b)(1).

Under Act 6, an insured must choose either the full tort option or the limited tort option. Under the limited tort option, an insured remains eligible to seek compensation for economic loss as a result of a motor vehicle accident, but is restricted in his or her right to recovery of non-monetary damages.[3] Election of this option carries a lower premium.

2. Act of February 7, 1990, P.L. 11, No. 6.

3. The limited tort alternative is subject to a host of exceptions. In a variety of situations, most notably the "serious injury" exception, the insured bound by the limited tort election retains *full* tort election rights. Section 1705(d) states that "[u]nless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss, except that:

(1) An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

(i) is convicted or accepts Accelerated Rehabilitative Disposition (ARD) for driving under the influence of alcohol or a controlled substance in that accident;

(ii) is operating a motor vehicle registered in another state;

The legislature recognized the proliferation of lawsuits as a major cause of escalating automobile insurance rates. Seeking to attack the root of the problem, the legislature provided insureds with a limited tort option. In return for relinquishing the right to seek recovery for non-monetary damages in certain cases, an insured who chose the limited tort option would pay a lower premium. The insured would benefit and, if the legislature's objectives for control over litigation carried through, the benefit would reach all Pennsylvania insureds in the form of reduced insurance rates. Under this theory, the legislators could institute a plan of rate reductions, rate freezes, and lowered minimum coverage offerings, paid for, ultimately, by the restricted coverage in the limited tort option. *See* 75 Pa.C.S.A. §§ 1799.7(b), (d) and (e), 1711, and 1731.

The legislature sought to implement the rate reductions in two tiers: first, under section 1705 of the Vehicle Code, insurers were required to introduce the plan to **existing** policy holders, to notify them of the available tort options and **inform them of the annual premium for each option;** second, insurers were required under section 1791.1 to notify

(iii) intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury or the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

(iv) has not maintained financial responsibility as required by this chapter, provided that nothing in this paragraph shall affect the limitation of section 1732(d)(2) (relating to availability, scope and amount of coverage).

(2) An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

(3) An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

75 Pa.C.S.A. § 1705(d). *See Dodson v. Elvey,* 445 Pa.Super. 479, 665 A.2d 1223 (1995).

new policy holders (those applying for original coverage on or after July 1, 1990) of the available tort options. 75 Pa.C.S.A. § 1791.1.

Section 1705, the first tier, pertains to policies in existence with *first renewals* due on or before July 1, 1990; the required section 1705 form provides a space for the insurer to indicate the comparative premiums for the limited and full tort options. Section 1791.1(b), the second tier, refers to *original* applications for new insurance; the required form provides no space for cost comparisons. This variance in notice requirements is the heart of this dispute.

Section 1705 reads as follows:

**§ 1705. Election of tort options.**

**(a) Financial responsibility requirements.—**

(1) Each insurer, not less than 45 days prior to the **first renewal** of a private passenger motor vehicle liability insurance policy on and after July 1, 1990, shall notify in writing each named insured of the availability of two alternatives of full tort insurance and limited tort insurance described in subsection (c) and (d). The notice shall be a standardized form adopted by the commissioner and shall include the following language:

## NOTICE TO NAMED INSUREDS

A. "Limited Tort" Option—The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages as set forth in the policy or unless one of several other exceptions noted in the policy applies. **The annual premium for basic coverage as required by law under this "limited tort" option is $ ——.**

B. "Full Tort" Option—The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other non-monetary damages as a result of injuries caused by other drivers. **The annual premium for basic coverage as required by law under this "full tort" option is $ ——.**

75 Pa.C.S.A. § 1705(a)(1) (emphasis added).

Section 1791.1(b) reads similarly, but does not include any language pertaining to a *first* renewal on or after July 1, 1990, and it does not include a space to indicate the premium differential. Section 1791.1(b) provides:

**§ 1791.1. Disclosure of premium charge and tort options.**

**(b) Notice of tort options.**—In addition to the invoice required under subsection (a), **an insurer must, at the time of application for original coverage** for private passenger motor vehicle insurance **and every renewal thereafter, provide to an insured the following notice** of the availability of two alternatives of full tort insurance and limited tort insurance described in section 1705(c) and (d) (relating to election of tort options):

The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two tort options:

**A. "Limited Tort" Option**—This form of insurance limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of

"serious injury," as set forth in the policy, or unless one of several other exceptions noted in the policy applies.

**B. "Full Tort" Option**—This form of insurance allows you to maintain an unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other non-monetary damages as a result of injuries caused by other drivers.

75 Pa.C.S.A. § 1791.1(b).

For existing policy holders with renewal on or after July 1, 1990, full tort election reduced the total premium by 10%; limited tort election reduced the total premium by 22%. 75 Pa.C.S.A. § 1705, 1799.7(a). In return for the greater reduction in premium, an additional 12%, the insured limited his or her tort recovery for non-monetary damages. 75 Pa.C.S.A. § 1799.7(b)(1) and (b)(2). The rate reductions, 10% for full tort and 22% for limited tort, reduced the "total premium for the same selection of coverages and coverage limits in effect on December 1, 1989." *Id.*

Section 1799.7 of the Vehicle Code provides:

**§ 1799.7. Rates.**

**(a) Rate filing.**—All insurers and the Assigned Risk Plan must file for new private passenger motor vehicle rates on or before May 1, 1990. These rates shall apply to all policies issued or renewed on and after July 1, 1990.

**(b) Rate reductions.**—The rates charged by insurers under the filing required by subsection (a) shall be reduced from current rates as follows:

(1) For an insured electing the limited tort option under section 1705 (relating to election of tort options), the total premium charged for any selection of coverages and coverage limits **shall be reduced** by at least 22% from the total premium for the same selection of coverages and coverage limits in effect on December 1, 1989.

(2) For an insured bound by the full tort option under section 1705, the total premium charged for any selection of coverages and coverage limits **shall be reduced** by at least 10% from the total premium for the same selection of coverages and coverage limits in effect on December 1, 1989.

75 Pa.C.S.A. § 1799.7.

In the two cases before us, *Havel v. McCarry* [hereinafter *Havel*] and *Donnelly v. Bauer* [hereinafter *Donnelly*], plaintiffs/insureds are personal injury claimants in automobile accident cases. The insureds applied for new policies, which were issued after July 1, 1990; both insureds elected the limited tort option. In both *Havel* and *Donnelly*, the plaintiffs had been sent section 1791.1 notice, with no premium or cost comparison.

In *Donnelly*, the insured's policy was issued through Pennsylvania's Assigned Risk Plan;[4] in his original application, Donnelly signed a limited tort election in a standardized form used by the Assigned Risk Plan, Form PA–1000.[5] The risk was assigned to State Farm Insurance Company. In *Havel*, the insured signed a limited tort election in his original application for insurance with Allstate Insurance Company. Both notices in the two original applications complied with

---

**4.** The Assigned Risk Plan, adopted by the Insurance Department pursuant to 75 Pa.C.S.A § 1741, provides for the "equitable apportionment" among motor vehicle liability insurers of applicants who are entitled to insurance but are unable to procure it through ordinary methods. All motor vehicle liability insurers are required to participate in the Assigned Risk Plan. *See* 75 Pa.C.S.A. §§ 1741 *et seq.*

**5.** In 1990, the Assigned Risk Plan filed an action challenging the Insurance Department's interpretation of Act 6, arguing that it was not an "insurer" for purposes of Act 6. This suit was settled by the July 6, 1990 stipulation and order approved by the Honorable Joseph T. Doyle of the Commonwealth Court of Pennsylvania. The Insurance Department stipulated that for purposes of Act 6, the Assigned Risk Plan was not an "insurer" and, therefore, was not required to comply with section 1705 or section 1791.1 notice requirements. The Assigned Risk Plan form for notice of tort options, Form PA–1000, was approved by the Insurance Department and ratified by order of President Judge Doyle. For purposes of our review, Form Pa–1000 and section 1791.1 are analogous and we see no need to review the notices, or issues one and two, separately.

section 1791.1(b). *See Lucas v. Progressive Casualty Ins. Co.,* 451 Pa.Super. 492, 680 A.2d 873 (1996) (conclusive presumption that appellants waived their uninsured and underinsured motorist coverage did not apply where insurer failed to comply with the mandates of section 1731 of the MVFRL).

The legislature has delegated to the Insurance Department of Pennsylvania the duty of administering and interpreting insurance matters under the Vehicle Code. 75 Pa.C.S.A. § 1704(b). Section 1704(b) of the Vehicle Code states:

> The Insurance Department shall administer and enforce those provisions of this chapter as to matters under its jurisdiction as determined by this chapter or other statute and may make rules and regulations necessary for the administration and enforcement of those provisions.

75 Pa.C.S.A. § 1704(b). In this regard, the Insurance Department, through its Office of Rate and Policy Regulation, issued various statements of policy in Pennsylvania's Administrative Code to guide insurers in implementing the tort option notice. Section 68.102 of the Code described the form utilized in section 1705, which includes the premium differential, as follows:

> The form requires an indication for the dollar amount of savings that will be realized by the choice of the full tort or limited tort option. **The dollar savings notification will offer an insured a way to compare the price of his current in-force policy with the same policy enjoying either the minimum 10% full tort or 22% limited tort cost savings mandated by the act of February 7, 1990 (P.L. 11, No. 6) (Act 6).** The term "basic coverage," as used in this notice, means the coverages that the insured has in force at the time the notice is sent.

31 Pa.Code § 68.102.

Section 68.107 of the Code, which describes the form required for new business under section 1791.1(b), provides:

§ **68.107. Section 1791.1(b)—notice of tort options.**

Notices for limited and full tort options are mandated for insureds. These forms are required for new business on or

after July 1, 1990, and for renewal policies issued after the first renewal cycle following the **initial notices required in 75 Pa.C.S. § 1705** (relating to election of tort options). The use of statutory language is required.

31 Pa.Code § 68.107 (emphasis added).

In a challenge to a regulation promulgated by the administrative agency, which is entrusted with enforcement and administration of the statute, great weight is given to the agency's interpretation. *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977). Unless plainly erroneous or inconsistent with the statute under which regulations were promulgated, an administrative agency's interpretation of its regulations is of controlling weight. *See Fair Winds Manor v. Department of Public Welfare*, 517 Pa. 106, 111, 535 A.2d 42, 44 (1987); *see also Alpha Auto Sales, Inc. v. Dept. of State, Bureau of Professional and Occupational Affairs*, 537 Pa. 353, 644 A.2d 153 (1994); *Concerned Residents of the Yough, Inc., v. Department of Environmental Resources*, 540 Pa. 605, 670 A.2d 1120 (1995); *Mathies Coal Co. v. Department of Environmental Resources*, 522 Pa. 7, 18, 559 A.2d 506, 512 (1989). This deference acknowledges the agency's command and ability to address problems specific to its area of specialized knowledge and expertise. *Feingold, supra; see also Nationwide Mutual Ins. Co. v. Foster*, 143 Pa. Commw. 433, 599 A.2d 267 (1991) (an agency's interpretation of statute is entitled to "great judicial deference")

Here, the trial court determined that the Insurance Department's position and interpretation of its regulations under the statute was clearly erroneous. The court determined that the insureds had not made valid elections and, therefore, the full tort election applied. *See* 75 Pa.C.S.A. § 1705(a)(3).[6] The trial court based its finding of clear error on public policy concerns, stating, generally, that as a matter of course consumers demand notice of the cost of goods or services, and

---

**6.** Section 1705(a)(3) provides in part: "All notices required by this section shall advise that if no tort election is made, the named insured and those he is empowered to bind by his choice are conclusively presumed to have chosen the full tort alternative." 75 Pa.C.S.A. § 1705(a)(3).

sellers routinely provide this information. The trial court reasoned:

> No one can deny the plethora of activity on behalf of consumers, generally as well as in the insurance industry, ... Despite the outpouring of consumer notice and protection legislation and governmental policies assuring consumer notice, the Insurance Department would have us deny to the consumer the most important information necessary in making an informed auto insurance benefit selection, that is, the cost of limited tort as opposed to full tort coverage.

Acknowledging the significance of consumer protection concerns, we cannot consider this public policy issue to the exclusion of the General Assembly's explicit purpose and language, or without due deference to the Insurance Department's interpretation of the statute and its regulations. Notably, the trial court disregarded the public policy concerns Act 6 sought to promote. *See Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234, 1235 (1994) ("The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL."). The court focused, instead, on consumer protection, concerns this court finds not so significantly affected by the legislation as to call for nullification.

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their convictions of what is just and right and in the interest of the public weal.... Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision.

*Mamlin v. Genoe,* 340 Pa. 320, 325, 17 A.2d 407, 409 (1941). *See also Hall v. Amica Mutual Insurance Co.,* 538 Pa. 337, 648 A.2d 755 (1994).

Our rules of statutory construction require that in interpreting statutes we must at all times seek to ascertain and effectuate the legislative intent. 1 Pa.C.S.A § 1921(a). "Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words." *Pennsylvania Assigned Claims Plan v. English,* 541 Pa. 424, 429–31, 664 A.2d 84, 87 (1995). In interpreting statutes, a court should not assign a contrived meaning to clear language. *Crosby by Crosby v. Sultz,* 405 Pa.Super. 527, 592 A.2d 1337 (1991). Further, the legislature is presumed to have had no intention of adopting conflicting provisions in the same statute. *In re Borough of Lemoyne,* 176 Pa.Super. 38, 107 A.2d 149 (1954).

Despite imperfections acknowledged during legislative debate, the purpose and the language of the statute are clear. We dispel at once the supposition that the failure to include premium differentials in section 1791.1 notice forms was legislative oversight or that the statute is ambiguous. Reading the statute and the Code together, it is apparent to this court that the statutory provisions and the Code are consistent; both acknowledge distinctions in notice for new business on or after July, 1990 and renewal policies following initial section 1705 notice, and in notice for existing policy holders and first renewals occurring on or before July 1, 1990. *See Fair Winds Manor, supra.* In other words, existing policy holders and first renewals occurring on or after July 1, 1990 received section 1705 notice; thereafter, original applicants received section 1791.1 notice, and received that notice again upon renewal.

To reason, as the trial court did, that the Insurance Department's position was "clearly erroneous," begs the question of whether the agency properly interpreted the statute and the regulations. Additionally, the court's argument is founded upon an incorrect premise. The new applicants were not denied basic information in the insurance transaction; this vital information was readily available to them. *See* 75 Pa. C.S.A. § 1791.1(d).[7]

7. Section 1791.1(d) provides:

As evidenced by the statutory scheme, the legislature envisioned two classes: existing policy holders and new policy applicants. The statutes, the code, and the legislative history suggest that existing policyholders, having a contract in place, required immediate information because their premiums would be altered; new policy applicants, on the other hand, required only notice of the tort options. The limited tort option description required for new applications under section 1791.1 clearly explains the rights that are restricted, and the legal effect of each option. Furthermore, the limited tort option requires an affirmative selection by the applicant/insured. *See Dodson v. Elvey,* 445 Pa.Super. 479, 492, 665 A.2d 1223, 1230 (1995) (a limited tort elector affirmatively agrees, in exchange for a lower premium rate, that any potential tort action for noneconomic damages is precluded where his injuries are not serious). If no selection is made, the full tort option is deemed to apply. *See* 75 Pa.C.S.A. § 1705(a)(3); *see also Dodson,* 445 Pa.Super. at 486, n. 2, 665 A.2d at 1227 n. 3; *cf. Botsko v. Donegal Mutual Insurance Co.,* 423 Pa.Super. 41, 620 A.2d 30, *alloc. denied,* 536 Pa. 624, 637 A.2d 284 (1993) (if insurer does not follow statute governing notice of available benefits and limits respecting uninsured and underinsured motorist coverage, statutory mandate regarding such coverage may be complied with only by including coverage or by obtaining affirmatively expressed rejection in writing from insured).

Unlike the existing policyholders, the applicant is shopping for insurance, dealing face-to-face with an agent, and exploring coverage options and prices. The agent provides premium quotes for any combination of coverages. The existing policyholders, on the other hand, must be informed of the premium differential so they may determine the alteration in their total premium. As pointed out in the affidavit of Gregory S.

Upon an oral or written request, an insurer subject to this chapter shall provide to the requestor information on the requestor's cost to purchase from the insurer the minimum requested automobile insurance coverages under either of the two tort options described in subsection (b). These requirements shall include the request for and provision of information by telephone.

75 Pa.C.S.A. § 1791.1(d).

Martino, Deputy Commissioner for the Office of Rate and Policy Regulation of the Insurance Department of Pennsylvania, "insurers could assess their insureds' current coverages, the cost thereof, and calculate the *revised premiums* under Act 6." (emphasis added).

Furthermore, we emphasize Deputy Commissioner Martino's following explanation of the practical application and enforcement of section 1791.1 notice; we believe it is central to an understanding of the issue here:

> For subsequent renewals and new applicants, insurers are not required to provide ... written premium differentials under Section 1705(a), as found in the 1705 Form. **In fact it would be practically impossible to do so for new applicants; there can be no comparison between the applicant's previous and current premiums, because he had no previous policy or premiums due.** Additionally, if the insured had previous coverage, the agent and company would not be aware of the cost and benefit levels. Nevertheless, upon request, the insurer must disclose to a new applicant (or during a subsequent renewal) the premium differential for full versus limited tort for minimum mandated coverages, under Section 1791.1(d). Section 1705(a)'s written notice was intended to advise Pennsylvania's approximately five million existing policy-holders by mail (ie., during renewals) of the Act 6 changes and the potential options and cost savings from their current policies. **In contract, Section 1791.1 notice anticipated that new applicants would meet with their agents and discuss various types and levels of coverages and the costs thereof. It would be impractical and unnecessary to require agents to fill out a 1705 Form for new applicants and provide written premium comparison for full versus limited tort costs for any permutation of coverages and amounts of coverages. Under these circumstances, the agent could speak with the applicant and provide cost comparisons immediately, responding to the applicant**

**directly and tailoring the coverage to meet the applicant's needs and financial situation.**

Here, plaintiffs elected the limited tort option, were on notice of what full tort and limited coverage entailed, and were on notice that their rights to recovery were restricted under the limited tort option. Plaintiffs chose to limit their right to recovery, placing their signatures under the limited tort option and paying a lower premium. *See Tukovits v. Prudential Ins. Co. of America,* 448 Pa.Super. 540, 672 A.2d 786 (1996) (if the insurer provides notice pursuant to statutory form, the insured is presumed to have been advised of the benefits and limits available); *see also Motorists Ins. Co. v. Emig,* 444 Pa.Super. 524, , 664 A.2d 559, 561–62 (1995); *Insurance Co. of the State of Pennsylvania v. Miller,* 426 Pa.Super. 519, , 627 A.2d 797, 798–99 (1993); *Botsko,* 423 Pa.Super. at ——, 620 A.2d at ——. Only now, in hindsight, do plaintiffs decide that this may not have been the best choice. Nonetheless, plaintiffs have received the benefit of their bargain; they have paid lower premiums, received the coverage correlating to that premium, and cannot now claim that they should receive the benefit of a choice they did not make. We will not endorse such a casual approach to personal business. *See Jeffrey v. Erie Insurance Exchange,* 423 Pa.Super. 483, 501–02, 621 A.2d 635, 645 (1993), *alloc. denied,* 537 Pa. 651, 644 A.2d 736 (1994) ("[T]here is a correlation between the premiums paid by the insured and the coverage a claimant could reasonably expect to receive.").

Notwithstanding the force of sentiment behind the consumer protection arguments, the trial court's findings dismantle the legislative design and neglect basic principles of administrative law. "[C]onstitut[ing] itself the voice of the community" in circumstances unwarranted, *Mamlin, supra,* the trial court declared the Insurance Department's interpretation clear error. In so doing, the trial court exceeded the bounds of reason and authority. We conclude, therefore, that the court erred in overturning this administrative determination. *Fair Winds Manor, supra.*

Reversed.[8]

DEL SOLE, J., files a dissenting opinion in which BECK and ELLIOTT, JJ., join.

DEL SOLE, Judge, Dissenting.

I cannot accept the Majority's conclusion that the trial court in this matter "exceeded the bounds of reason" and sought to "dismantle the legislative design" by yielding to "the force of sentiment behind the consumer protection arguments." My review of the statutory provisions at issue leads me to conclude that the trial court's decision, finding the limited tort waiver forms to be inadequate, was eminently reasonable, was a fair interpretation of the legislative pronouncements and was an appropriate implementation of the purposes behind these provisions.

The Majority finds that a § 1705 notice, which details the premium differential between a "limited tort" and a "full tort" option, is not applicable where the insured has made an original application for new insurance. *See* 75 Pa.C.S.A. § 1705. It concludes that it is only to be applied to the renewal of existing policies occurring on or before July 1, 1990. It acknowledges that its ruling does not conform to significant consumer protection concerns, but states that such public policy issues cannot be considered "to the exclusion of the General Assembly's explicit purpose and language." There is, however, no explicit purpose provided in the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.*, and the language of § 1705 requires insurers to advise their customers of the cost differentials of each option.

The Motor Vehicle Financial Responsibility Law, 75 Pa. S.C.A. § 1701 *et seq.* "does not contain a statement of findings and purpose." *Wolgemuth v. Harleysville Mut. Ins.*, 370 Pa.Super. 51, 63, 535 A.2d 1145, 1151 (1988). To ascertain the motivation for the MVFRL and its particular provisions the

8. Based upon our disposition of this case, we find it unnecessary to address appellants' final issue concerning the trial court's jurisdiction. We add, however, that despite uncertain trial court jurisdiction, this court's jurisdiction is not in question.

courts have looked to the legislative history. A major consideration for passage of the MVFRL was the escalating costs of coverage and the increasingly high number of uninsured motorists. *Id.* The Majority writes that the amendments to the MVFRL, referred to as Act 6, which provide for the election of tort options, were designed to temper the rising cost of automobile insurance. While I don't dispute that costs concerns were a major impetus to the amending legislation, it was not the only concern. It is apparent from the legislative discussions surrounding the passage of Act 6 that it was important to allow *informed* consumers to make choices about the insurance which would best suit their needs. Representative Hayden, one of the sponsors of Act 6, spoke to the members of the House and stated:

> For the first time, I think, under the bill we will require more information be given to our constituents in understandable plain English. In fact, that plain English is spelled out in the bill. So before our constituents exercise a decision as to what kinds of coverages they are going to buy, they will be able to see now for the first time what their coverage limits are, what the various costs of those coverages are, and then what they are entitled to receive.

House Legislative Journal, page 211, February 7, 1990.

To protect consumers by providing them with information about their options necessitates that they be informed about the costs associated with each choice. The goal of providing for an informed consumer is not in conflict with the equally important goal of making automobile insurance more affordable and more available. Both concerns were at work in the passage of Act 6.

The language of the statutory provisions makes it clear that at least one of the purposes behind the passage of Act 6 was to inform consumers about their options when choosing automobile insurance. The provisions of Act 6 call for two separate notices to provide consumers with adequate information. The first is found in § 1705, which provides the means by which a consumer is to be informed of the options, their costs and then the means to choose either option. Section (a)(1) requires that

insurers are to notify their insureds of their two alternatives in writing 45 days prior to their first renewal. Section (a)(4) directs that this same notice be given to new customers when applying for automobile insurance. It specifically states:

> Each insurer, prior to the first issuance of a private passenger motor vehicle liability insurance policy on and after July 1, 1990, shall provide each applicant with the notice required by paragraph (1). A policy may not be issued until the applicant has been provided an opportunity to elect a tort option.

75 Pa.C.S.A. § 1705(a)(4).

The Majority ignores the language of (a)(4) and reads the notice requirements, which include pricing information, to apply only to existing policy holders who were renewing their insurance on or before July 1, 1990. A reading of the entire text of § 1705, however, makes it clear that the notices therein are to apply to renewals as well as to new policy holders. This is evident in the language of (a)(4) which speaks to notice "prior to the first issuance" of insurance. *Id.*

The Majority writes that the notice to be given to new policy holders is that described in § 1791.1. *See* 75 Pa.C.S.A. § 1791.1 The language set forth in this section is designed to provide information to the consumer about the differences between the two tort options, but it does not contain a space for indicating the premium differential, as does § 1705. The § 1791.1 notice is to be given at the time of "application for original coverage ... and for every renewal thereafter." 75 Pa.C.S.A. § 1791.1(b). The Majority reasons that notice of the different costs is, therefore, not required for new policy holders. Although § 1791.1 does not provide for pricing information between the tort options, it remains necessary for insurers to provide that information under § 1705. As stated, § 1705(a)(4) directs that a 1705 notice be given to "applicants." It, like § 1791.1, speaks directly to the notice requirements for new applicants, and demands that they be given the same notice, including pricing information, which is required to be given to "renewal" customers under § 1705(a)(1). Therefore, I believe it to be incumbent upon insurers to provide both the

§ 1705 notice and the § 1791.1 notice to all those applying for automobile insurance coverage. To require anything less would be to ignore the provisions of § 1705(a)(4). Because a statute must be construed so as to give effect to all of its provisions if possible, and because the General Assembly is presumed not to have intended to include mere surplusage, *Lukus v. Westinghouse Elec. Corp.*, 276 Pa.Super. 232, 419 A.2d 431 (1980), I believe it necessary to read the two sections together to mandate notice of the pricing differentials.

My view, which would affirm the action of the trial court, will provide protection to consumers by completely informing them of their choices and the costs associated with each, and will provide no costly burden on insurers who will be required to provide their customers and potential customers with information they have available, but now must place in writing. Because I believe this position best acknowledges the legislative intent as gleaned from the comments in the House and gives effect to the all the provisions of Act 6, I dissent.

BECK and ELLIOTT, JJ., join this dissenting opinion.