**Mark KELLY, Appellant,**

v.

**Jeffrey ZIOLKO, Cynthia Ziolko and Frank Ziolko, Jr. (Two Cases).**

Superior Court of Pennsylvania.

Argued Nov. 6, 1997.
Filed Dec. 15, 1997.

Gwendelynne Dell, Media, for appellant.

Paul M. Schaffer, Bethlehem, for appellees.

Before CIRILLO, President Judge Emeritus, and JOHNSON and HOFFMAN, JJ.

CIRILLO, President Judge Emeritus:

Mark Kelly appeals from an order entered in the Court of Common Pleas of Schuylkill County granting final judgment in favor of Appellees, Jeffrey Ziolko, Cynthia Ziolko and Frank Ziolko, Jr.[1] We affirm.

On October 5, 1994, while traveling north on Schuylkill Mall Road in Schuylkill County, Kelly's vehicle collided at an unnamed crossroad with a vehicle driven by Appellee Jeffrey Ziolko. The collision occurred when Ziolko failed to obey a stop sign which was placed at the intersection. At the moment of impact, Kelly was thrown forward and up, then backwards against the seat; Kelly also struck his knees on the dashboard and his forehead on the metal strip between the roof and the windshield of his automobile. Kelly sustained injuries to his neck, lower back, and suffered numbness in his face and toes.

As a result of the accident, Kelly filed a complaint against the Ziolkos seeking damages, including non-economic damages, under the Motor Vehicle Financial Responsibility Law (MVFRL). The Ziolkos, in their Answer and New Matter, alleged that because Kelly had chosen the limited tort option under his automobile insurance policy, he was not entitled to recover non-economic damages. The trial court granted a partial motion for summary judgment in favor of the Ziolkos which effectively dismissed Kelly's claims for non-economic damages. Kelly filed a notice of appeal from this order granting partial summary judgment. The court subsequently ordered that judgment be entered in favor of all defendants with regard to all claims; this court order also incorporated a stipulation between the parties that

---

1. Although the April 11, 1997 order from which appellants appeal is interlocutory because it only granted partial summary judgment, the other order from which appellants filed their notice of appeal acts as a final summary judgment order which is appealable under Pa.R.A.P. 341(b), and which we may review. Pa.R.A.P. 341(b) (a final order is any order that disposes of all claims or of all parties). Cf. Bonner v. Fayne, 441 Pa.Super. 432, 657 A.2d 1001 (1995) (appeal from an order granting summary judgment which dismissed an action as to fewer than all defendants should be quashed). This appeal, therefore, is timely.

Kelly's claims for economic damages as well as all other claims against the defendants be voluntarily dismissed.

On appeal, Kelly presents us with the following issues for our review:

(1) Whether the trial court erred in failing to accord any effect to an insurer's violation of section 1791(b) and section 1705(a) of the Motor Vehicle Financial Responsibility Law?

(2) Whether the trial court erred in granting summary judgment to Defendants on the issue of "serious impairment of body function" where the Plaintiff sustained a herniated lubosacral disc, where the herniation is permanent and will not improve, where the herniation permanently restricts the Plaintiff's employment capabilities, and where the Plaintiff's orthopedist continues to prescribe invasive medical treatment more than two years after the accident?

(3) Whether the trial court erred in interpreting the phrase "impairment of body function" to mean "impairment of motor function?" [2]

Our standard of review in cases of summary judgment is well settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Merriweather v. Philadelphia Newspapers, Inc.,* 453 Pa.Super. 464, 470–72, 684 A.2d 137, 140 (1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2, 42 Pa.C.S.A. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law. *Id.*

Kelly first claims that the trial court erred by failing to acknowledge that his insurer, Nationwide Insurance Company, violated sections 1791.1(b) and 1705(a) of the MVFRL with regard to his application for automobile insurance.

Section 1791.1 of the MVFRL states, in part:

(b) **Notice of tort options.**—In addition to the invoice required under subsection (a), an insurer must, at the time of application for original coverage for private passenger motor vehicle insurance and every renewal thereafter, provide to an insured the following notice of the availability of two alternatives of full tort insurance and limited tort insurance described in section 1705(c) and (d) (relating to election of tort options):

The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two tort options:

"Limited Tort" Option —— This form of insurance limits your right and the rights of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury," as set forth in the policy, or unless one of several other exceptions noted in the policy applies.

"Full Tort" Option. —— This form of insurance allows you to maintain an unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering or other nonmonetary damages as a result of injuries covered by other drivers.

---

**2.** We have reorganized Kelly's three issues presented in this appeal for clarity of appellate review.

If you wish to change the tort option that currently applies to your policy, you must notify your agent, broker or company and request and complete the appropriate form.

75 Pa.C.S.A. § 1791.1(b).

Section 1705 of the MVFRL, which outlines the insurer's financial responsibility requirements in conjunction with an insured's election of tort options states, in relevant part:

Each insurer, not less than 45 days prior to the first renewal of a private passenger motor vehicle liability insurance policy *on and after July 1, 1990,* shall notify in writing each named insured of the availability of two alternatives of full tort insurance and limited tort insurance described in subsections (c) and (d). The notice shall be a standardized form adopted by the commissioner and shall include the following language:

NOTICE TO NAMED INSUREDS

1. **"Limited Tort" Option.** —— The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies. *The annual premium for basic coverage as required by law under this "limited tort" option is $ _____.*

Additional coverages under this option are available at additional cost.

B. **"Full Tort" Option.** —— The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other non monetary damages as a result of injuries caused by other drivers. *The annual premium for basic coverage as required by law under this "full tort" option is $ _____*

75 Pa.C.S.A. § 1705(a)(1) (emphasis added).

In *Donnelly v. Bauer,* 453 Pa.Super. 396, 683 A.2d 1242 (1996), *appeal granted,* 548 Pa. 627, 693 A.2d 967 (1997), our court, sitting *en banc,* was faced with the task of interpreting these same two notice provisions of the MVFRL. Essentially, *Donnelly* addressed the issue of when and to whom it was necessary to give premium differentials and cost comparison information regarding the two types of insurance coverage: full and limited tort. In reaching its decision, the *Donnelly* court looked to the language of the applicable MVFRL provisions, examined the legislative history of the MVFRL, considered consumer protection arguments, and even went so far as to reiterate sentiments of the Deputy Commissioner for the Office of Rate and Policy Regulation for the Insurance Department of Pennsylvania. The court ultimately concluded that new policy applicants (those who applied for insurance after the July 1, 1990 amendments to the MVFRL) were not entitled to receive notice of the cost comparisons between the premium differentials of the two types of insurance coverage. These new applicants had received the basic information necessary to put them on adequate notice of the rates, and additional information was obtainable upon oral or written request to the insurer.

The *Donnelly* court also found that the heightened notice regarding premium differentials of the cost of limited versus full tort coverage, found in section 1705(a)(1), must be given to existing policy holders upon their first policy renewal after the effective date of the amendments to the MVFRL, July 1, 1990. The two classes of insureds ((1) the

new applicants applying for insurance after the amendments and (2) the existing policy holders who applied for insurance prior to the amendments), the court found, were not similarly situated. In essence, the existing policy holders who obtained their original application for insurance prior to the amendments would not be cognizant of the fact that the legislature had now given them the opportunity to choose between two different types of tort coverage, limited or full. They, therefore, would need notice of the two types of coverage in order to be fully informed consumers. By contrast, persons who were applying for insurance after the 1990 amendments would neither need nor be able to compare the difference between the various costs of insurance coverage, having no pre-existing policy cost with which to compare the premiums for the two new coverage options created by the amendments.

■ Presently, Kelly admits that he originally applied for automobile insurance from Nationwide on September 12, 1990, and, in March of 1992 elected the limited tort option under his policy. Unfortunately, these dates prove fatal to Kelly's claim that he was denied proper section 1705 notice, and, therefore, failed to make a valid limited tort election. Because Kelly applied for insurance after the effective date of the MVFRL amendments—July 1, 1990—Nationwide was only required to give Kelly notice pursuant to section 1791.1(b), which included a description of the two tort insurance options, the rights restricted under each option, the relevant expenses and types of recovery available under each option, and the legal effect of each option. *Donnelly*, 453 Pa.Super. at 407–09, 683 A.2d at 1248. He was *not* entitled to receive notice of the cost comparisons between the premium differentials of the two types of insurance coverage available under the MVFRL. *Id.*

On appeal, Kelly readily concedes that he elected the limited tort option in March of 1992 (after the MVFRL amendments) and that the election form contained the language found in section 1705 save for any cost comparison information. In essence, he admits that the form he signed in order to elect the limited tort option in March contained the requisite notice contained in section 1791.1— the amount of notice to which he was entitled. *See Donnelly*, 453 Pa.Super. at 401–03, 683 A.2d at 1245 ("[s]ection 1791.1(b) reads similarly [to section 1705(a)(1)], but does not include any language pertaining to a *first* renewal on or after July 1, 1990, and it does not include a space to indicate the premium differential)." Accordingly, we find that Kelly was on proper notice of what full tort and limited tort coverage entailed, that he validly elected the limited tort option, and that his right to recovery was restricted to economic damages under the limited tort option. *Donnelly*, 453 Pa.Super. at 409–11, 683 A.2d at 1249.

In his next two issues, Kelly claims that the trial court erred in determining that the injuries he incurred in his automobile accident were not of the serious nature required in order to recover non-economic damages as a limited tort plaintiff. He further contends that in coming to this conclusion, the court based its decision on the fact that Kelly did not sustain a serious impairment of *motor* functions, not *body* function. We find both arguments to be without merit.

The MVFRL defines the term "serious injury" as:

A personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.

75 Pa.C.S.A. § 1702. In *Dodson v. Elvey*, 445 Pa.Super. 479, 665 A.2d 1223 (1995), *appeal granted*, 544 Pa. 608, 674 A.2d 1072 (1996), our court decided whether a motorist who injured his elbow in an automobile accident had met the serious injury threshold in order to recover non-economic damages under the MVFRL as a limited tort plaintiff. The court held that the determination of whether a plaintiff has sustained serious bodily injury is a question for the trial judge, and only where there is a substantial dispute of fact on the issue must the question go to the jury. *Id.* at 495–97, 665 A.2d at 1232. At the point that the evidence proves that the threshold for serious injury has been met, then the jury may decide only issues relating to damages and liability. *Id.*

In *Dodson*, the plaintiff sustained immediate pain in his low back, the back of his head,

his right arm and shoulder, and developed a frontal headache secondary to a mid-forehead contusion. The plaintiff testified that he could not move his arm for the entire month following the accident. He further testified that he did not return to his job as a warehouseman for approximately four months following the accident. After being treated by an orthopedist for a diagnosed rotator cuff injury and fractured elbow, plaintiff was referred to a second physician who diagnosed that he had a cervical sprain, lumbar strain, and an iliopsoas strain. While treating with this second physician, plaintiff had a decreased range of motion and limited right elbow and right shoulder range of motion; he also suffered from pain in his lower back.

On May 21, 1992, the plaintiff resumed his occupation, without any limitations on his work duties. Although the plaintiff complained of elbow and forearm weakness as well as muscle soreness, he was able to perform the same work duties as he had prior to the accident. After additional medical examinations, plaintiff was considered to have a full range of motion with some stiffness and slight motor skill limitations which were determined to be temporary. Although plaintiff continued to testify that he was not able to do his work with the ease that he could prior to the accident and that he was unable to participate in recreational activities such as bowling, playing softball, and lifting weights, the court found that he did not suffer from the "serious bodily injury" necessary to recover non-economic damages under the MVFRL. *Id.* at 499–503, 665 A.2d at 1234–35. *See also McClung v. Breneman,* 700 A.2d 495 (Pa.Super.1997) (our court, in footnote dicta, stated that because plaintiff had no difficulty engaging in recreational activities, suffered only mild pain when engaging in activity, had rather non-extensive treatment as she recovered, and returned to work without limitations within two months of her accident, she did not suffer serious impairment of body function).

Vital to its conclusion that the plaintiff was not entitled to nonmonetary damages, the *Dodson* court focused on the fact that the plaintiff's injuries did not involve a serious impact for an extended period of time on the plaintiff's life. *Dodson,* 445 Pa.Super. at 499–501, 665 A.2d at 1234. The court noted that while the plaintiff clearly suffered pain and still has slight limitations in his arm functions, such impairments did not "show serious interference with [plaintiff's] daily life, and that there is no triable issue of fact that [plaintiff] suffered a minor rather than a serious injury." *Id.* at 501, 665 A.2d at 1235.

In seeming contrast to our *Dodson* decision, a recently divided panel of our court determined that a limited tort plaintiff who suffered pains in her neck and lower back from an automobile accident, yet sustained no fractures from the accident, presented sufficient evidence of "serious bodily injury" to overcome her burden in defending against Appellee's summary judgment motion. In *Leonelli v. McMullen,* 700 A.2d 525 (Pa.Super.1997), our court reversed and remanded the trial court's decision to grant summary judgment in favor of Appellee defendant, where the trial court had found that the plaintiff did not establish serious impairment of bodily function based upon the following facts: (1) fifteen months after plaintiff's accident, she began work as a medical transcriber, whereas, prior to the accident, she was unemployed; (2) although plaintiff refrained from engaging in certain recreational activities, she was never ordered to do so by a physician; (3) plaintiff did not present any objective medical evidence in support of her claim that the injuries suffered in the accident caused serious impairment of her bodily function; and (4) plaintiff did not immediately consult with a physician following the accident. *Leonelli,* 700 A.2d at 528.

In justifying its decision to reverse the trial court, the *Leonelli* court determined that while the plaintiff's ability to work after the accident may be a factor in determining whether her injury was serious, such fact was not solely determinative of the issue. Rather, considering the record as a whole there was "sufficient evidence tending to show that appellant's injuries substantially interfered with her normal activities for a substantial period of time." Such evidence compelled the court to reverse and remand for a trial where appellant was granted the

opportunity to present evidence of her case to a factfinder. *Id.*

In order to determine whether Kelly's injuries were serious, and reconcile such determination with the varying decisions of this court on the same issue, we must focus on how Kelly's injuries affected the functioning of his neck and back, the extent of any impairment he may have suffered, the duration of such impairment, the treatment required to correct any impairment, and any other relevant factors. *Dodson,* 445 Pa.Super. at 499–501, 665 A.2d at 1234.

In his deposition, Kelly recited the following facts regarding the injuries he sustained as a result of the accident: to date he has severe pain in his neck, knees, and intermittent numbness in two toes on his left foot.[3] Since the accident, he has undergone a course of physical therapy and taken an MRI which indicated that he suffered from a bulged/herniated disk. He also voluntarily sought and received treatments for his injured back from a local chiropractor. Kelly further asserted that he suffers back pain as a result of physical activity or sitting for long periods of time; he has trouble sleeping, cannot run, is unable to walk or sit for longer than 15 minutes. He also contends that he is no longer able to engage in the following recreational activities: riding his mountain bike, riding his motorcycle, and hunting.

 We first note that there is no question that Kelly suffered "impairment" of a body function, however, in order to recover non-economic damages as a limited tort plaintiff, the MVFRL requires that the impairment involve more than the injury itself. *Dodson,* at 499–501, 665 A.2d at 1234. A "serious" impairment interferes substantially with an individual's normal activities, imposing more than a mild or slight limitation on such activity for an extended period of one's life. *Id.* Presently, the facts reveal that Kelly returned to work only three days after the accident; he was able to return to his full work duties within a short period of time. Clinically, Kelly sought medical treatment from the effects of the accident *three weeks*

following said accident. Furthermore, Kelly testified that the doctor who diagnosed his herniated disk did not recommend surgery. Kelly *voluntarily* sought chiropractic treatment for his back injuries. Just as the plaintiff in *Dodson,* Kelly's treatment during recovery involved physical therapy, the use of a TENS unit, and exercise. Kelly remains gainfully employed in his former occupation with minor limitations on lifting heavy objects. Although he claims that he is restricted in his recreational activities, he receives no treatment or prescriptive medication for his pain. *Dodson, supra.*

From the facts of this case, we cannot find that the trial court erred in determining that Kelly did not sustain serious bodily injury and that there was no need for the issue to go to a jury. *Dodson,* at 495–97, 665 A.2d at 1232. Unlike the trial court in *Leonelli,* the outcome of this case is not based on one determinant factor alone; it is based upon a totality of the facts of this case. *Cf. Leonelli, supra.* Accordingly, we find this issue meritless.

Finally, Kelly claims that the trial court improperly focused its serious injury analysis on whether he suffered *motor* impairment, rather than impairment to his *body* function. We also find this meritless. In its opinion, the trial court states the following reason for finding that Kelly did not sustain the serious injury necessary to successfully recover non-economic damages as a limited tort plaintiff under the MVFRL:

> Based upon the facts as set forth earlier in this Opinion and viewing the record in the light most favorable to the Plaintiff, we found that there was no substantial dispute of material fact that the Plaintiff has not suffered a "serious impairment of body function." Although he sustained injuries which continue to cause pain more than two years after the accident, the evidence shows that his injuries and the pain he suffers have not had a *serious* impact on his life for an extended period of time. Nor have the consequences of those injuries interfered substantially with his normal activities. He might not be able to do

---

**3.** Kelly later testified that the facial numbness he experienced immediately following the accident has since resolved itself.

some of the things that he did before the accident, but there are a number of things he is able to do, such as lifting 4" by 8" sheets of drywall, shoveling snow, raking leaves and cutting grass, which show that the injuries have really had only a slight limitation on his normal activities. Therefore, we found as a matter of law that Kelly did not suffer a "serious impairment of **body** function."

The trial court opinion also lists the two threshold questions, enunciated in *Dodson v. Elvey,* 445 Pa.Super. 479, 497–99, 665 A.2d 1223, 1233 (1995), that must be answered in order to determine whether a plaintiff has suffered a serious impairment of body function. There is nothing in the record, the briefs, or the trial court's opinion that leads us to believe that the trial court improperly based the focus of this issue on Kelly's motor functions after the accident, rather than the potential impairment to his body functions. Furthermore, Kelly has not directed us to any evidence in the record that supports such an argument. We, therefore, find this issue meritless.

Order affirmed.