**Nesmith v. Smith**

188

C.P. of Montgomery County, no. 95-23429.

*Jill C. Katz,* for plaintiff.
*John Lewis,* for defendant.

SUBERS, *J.,* September 16, 1998—This is an appeal from this court's order dated July 2, 1998, which granted defendant's motion for summary judgment.

## FACTS

This case arises out of a motor vehicle accident which occurred on March 8, 1994 at the intersection of Jarrettown Road and Aidden Lair Road in Upper Dublin Township, Pennsylvania. The plaintiff alleges he suffered personal injuries as a result of the accident. The plaintiff had elected the limited tort option on his policy of insurance for the motor vehicle he was driving at the time of the accident. An individual who is bound by the limited tort option may recover noneconomic damages only if it is determined that the individual has sustained a serious injury. 75 Pa.C.S. §1705(d).

The plaintiff testified in his deposition that he sustained injury to his left shoulder, right knee and lower back as a result of this accident. (Dep. of plaintiff; 9/30/96; pp. 9-10.) Immediately following the accident, the plaintiff refused an ambulance and medical treatment because he didn't think he was hurt that badly. (Dep. of plaintiff; 9/30/96; p. 83.) Later the same day, the plaintiff's father-in-law took him to the emergency room at Abington Memorial Hospital because he didn't have a car. (Dep. of plaintiff; 9/30/96; p. 84.) His chief complaints were left arm and shoulder, left shin pain, blurred vision left eye and headache. He was diagnosed with left shoulder strain and left tibia contusion. An x-ray of the left shoulder was negative. The plaintiff was prescribed Advil and Darvocet for pain and released.

On March 11, 1994, the plaintiff was treated by his family physician, Dr. Gail Turner. She scheduled a neurology consult due to his initial complaints of blurred vision with a headache. She ordered an MRI of the left shoulder to rule out a rotator cuff tear and an MRI of the right knee to rule out internal derangement. She ordered physical therapy to help reduce his discomfort. Plaintiff underwent physical therapy for approximately two months. (Dep. of plaintiff; 9/30/96; p. 93.)

X-rays of plaintiff's right knee were taken on March 11, 1994 and interpreted by Norman Hauser M.D. In his report, Dr. Hauser notes the appearance of the right knee is similar to a prior knee study of January 8, 1994, two months prior to the accident. On March 18, 1994, the plaintiff underwent MRIs of the right knee and left shoulder. The MRI of the left shoulder showed some hypertrophy of the acromioclavicular joint, as well as a degenerative spur along the undersurface of the distal acromion, causing impingement on the supraspinatus tendon and some mild increased signal in

the distal portion of the tendon, indicating tendinitis. The MRI of the right knee showed subluxing patella with degenerative changes.

The plaintiff saw an orthopedist, Dr. Martin Cohen, on March 23, 1994, who found the following upon examination:

(1) Contusion of left shoulder.

(2) Rotator tendinitis and impingement syndrome. The impingement syndrome antedated the injury. The injury did exacerbate the condition and provoke the rotator tendinitis.

(3) Subluxing right patella and probable chondromalacia patella secondary to direct blow between the patella and dashboard.

In June of 1995, Dr. Cohen performed arthroscopic surgery on the plaintiff's left shoulder, which he never related to the accident. Plaintiff was out of work for two months following this surgery.

Plaintiff was treated by Dr. David Sirkin, an osteopathic neurologist, on two occasions. Dr. Sirkin suggested MRIs of plaintiff's brain and spine. The MRI of the brain and cervical spine were normal. The MRI of the lumbosacral spine was suggestive of a small disc herniation without associated neural compression. Dr. Sirkin diagnosed the plaintiff with cervical strain/sprain and strain of the left shoulder. Plaintiff was also seen by Dr. Varada, a physiatrist, who performed an EMG on plaintiff's cervical spine, which was normal, and ruled out cervical radiculopathy. Plaintiff also was seen by Dr. A-Bhumi, who performed an EMG on plaintiff's lumbar spine, which was normal, and ruled out lumbar radiculopathy.

The plaintiff claims that as a result of his injuries, he is unable to lift his 2-year-old (who is 38 pounds) without experiencing back problems. (Dep. of plaintiff;

9/30/96; p. 49.) Both his knee and back hurt when he does a lot of walking. (Dep. of plaintiff; 9/30/96; p. 49.) His shoulder bothers him when he is sleeping and driving. (Dep. of plaintiff; 9/30/96; pp. 49-50.) Plaintiff does continue to drive trucks for his employer. He complains that he is unable to play basketball because he can't plant his leg. (Dep. of plaintiff; 9/30/96; p. 50.) Following the accident, plaintiff was out of work for only two months. (Dep. of plaintiff; 9/30/96; p. 51.) Following his surgery to his shoulder, which Dr. Cohen did not relate to the accident, the plaintiff was out of work for another two months. (Dep. of plaintiff; 9/30/96; p. 52.) The plaintiff was employed by Upper Moreland Township prior to the accident and still remains employed by Upper Moreland Township. Prior to the accident, he earned approximately $12 per hour. (Dep. of plaintiff; 9/30/96; p. 53.) The plaintiff claims that his duties at his job have been curtailed as a result of the accident. He only drives sanitation and he can no longer pave the streets. (Dep. of plaintiff; 9/30/96; pp. 53-55.) His current rate of pay is $14.02 per hour. He drives trash trucks, glass recycle trucks, and dump trucks and operates a backhoe. (Dep. of plaintiff; 9/30/96; p. 104.) He continues to be an active father, he attends his son's baseball games and coaches him. (Dep. of plaintiff; 9/30/96; p. 109.)

Based upon the foregoing facts, this court found that the plaintiff failed to satisfy the threshold of a serious impairment of bodily function under the Motor Vehicle Financial Responsibility Law and is precluded from recovering noneconomic damages.

## DISCUSSION

Under section 1705 of the MVFRL, a person who has selected the limited tort option on his insurance

policy is barred from recovering noneconomic damages if he has not suffered a "serious injury." 75 Pa.C.S. §1705(a). "Serious injury" is defined by the MVFRL as "[a] personal injury resulting in death, serious impairment of a body function or permanent serious disfigurement." 75 Pa.C.S. §1702. Plaintiff has not sustained a serious injury as defined by the MVFRL and the corresponding case law.

In *Dodson v. Elvey*, 445 Pa. Super. 479, 665 A.2d 1223 (1995), the court addressed the issue of what evidence a plaintiff must introduce in order to establish a serious impairment of body function. The plaintiff in *Dodson* was bound by the limited tort option under his auto insurance policy. As a result of plaintiff's accident, he claimed to have suffered injury to his lower back, the back of his head, his right arm and shoulder and a headache secondary to a forehead contusion. Thereafter, he received medical treatment with a number of doctors for a period of at least eight months. An MRI, which was performed on the plaintiff's shoulders, showed slight positive findings. Plaintiff claimed continued weakness in his shoulder. One of his primary treating physicians gave the opinion that he would suffer "long term with mild to moderate right upper extremity weakness" and that more likely than not he would develop arthritis in the future. The plaintiff further established expert evidence that his injuries might be symptomatic periodically for at least two to three years.

The plaintiff in *Dodson* was also out of work completely or restricted in his work for a period of over four months. He further claimed that with respect to restrictions in his activities, he could no longer engage in recreational bowling, weightlifting or softball.

Prior to trial, the defendant moved for summary judgment on the basis that as a matter of law, plaintiff

failed to establish that he had a serious impairment of bodily function. In response, the plaintiff raised the argument that the issue should be for the jury to decide. The court rejected this argument in the following manner:

"[W]here there is no substantial dispute of material fact that the plaintiff has not met the 'serious impairment of bodily function' threshold, or that the plaintiff has indeed met the threshold, the court should make the determination as a matter of law. If, upon review of the undisputed record, the threshold has not been met, the case should be dismissed." *Dodson,* 445 Pa. Super. at 497, 665 A.2d at 1232.

The court further discussed what evidence a plaintiff must introduce to overcome the threshold.

"We agree with both New York's and New Jersey's determinations that a plaintiff, to cross over the 'serious injury' threshold, must show a material dispute of fact by objective medical evidence. . . . Although we recognize that soft tissue injuries may be accompanied by subjective complaints of pain that are so severe that they result in a 'serious impairment of body function,' *Murray v. McCann,* . . . the impairment must be objectively manifested. Oral testimony alone (unless it is an admission of a party opponent) is never sufficient to support a motion for summary judgment, as credibility is at issue. . . . We underscore that the inquiry does not focus on the injury itself, but whether the injury caused serious impairment of body function." *Id.* at 498, 665 A.2d at 1233. (citations omitted)

The Superior Court held that the plaintiff in *Dodson* failed to show that his injury resulted in any serious interference with the plaintiff's daily life and there was no triable issue of fact that plaintiff suffered a minor rather than serious injury.

Similarly, in a more recent decision, the Superior Court held that the plaintiff did not suffer a serious bodily injury where plaintiff resumed his occupation with only minor limitations on work duties, sought medical treatment three weeks after the accident, was considered to have full range of motion with some stiffness and slight limitations which were determined to be temporary, and he received no treatment or prescriptive medication for pain, although he complained of arm weakness and muscle soreness and testified that he was unable to participate in recreational activities. *Kelly v. Ziolko,* 705 A.2d 868 (Pa. Super. 1997). Kelly's injuries were set forth in his deposition as follows:

"[T]o date he has severe pain in his neck, knees, and intermittent numbness in two toes on his left foot. Since the accident, he has undergone a course of physical therapy and taken an MRI which indicated that he suffered from a bulged/herniated disk. He also voluntarily sought and received treatments for his injured back from a local chiropractor. Kelly further asserted that he suffers back pain as a result of physical activity or sitting for long periods of time; he has trouble sleeping, cannot run, is unable to walk or sit for longer than 15 minutes. He also contends that he is no longer able to engage in the following recreational activities: riding his mountain bike, riding his motorcycle, and hunting." *Id.* at 874. (footnote omitted)

The trial court and Superior Court looked at the totality of the circumstances in determining Kelly did not sustain serious bodily injury and there was no need for the issue to go to a jury.

In the instant case, the plaintiff's injuries coupled with his testimony concerning the impact on his daily life does not amount to a serious impairment of a body function as defined by the MVFRL and the cases cited

above. Plaintiff refused treatment at the scene of the accident because he didn't think he was hurt that badly. Later that day, he went to the emergency room complaining of pain in his left arm and shoulder, his right knee and right shin. His shoulder was x-rayed and showed no significant abnormality in either bone or soft tissue.

He next saw his family physician, Dr. Gail Turner, who prescribed physical therapy and referred him to a physiatrist and an orthopedist. The physical therapy for his shoulder lasted one or two months. He was out of work for two months following the accident.

Plaintiff's orthopedist, Dr. Martin Cohen, diagnosed contusion, rotator tendinitis and impingement syndrome of the left shoulder. The impingement syndrome was pre-existing and exacerbated by the accident. As to the knee, he diagnosed a subluxing right patella and probable chondromalacia patella. X-rays of plaintiff's right knee were taken on March 11, 1994. Dr. Norman Hauser reviewed the x-ray of the right knee and stated that the appearance of the right knee was similar to a previous x-ray taken two months prior to the accident. In May of 1995, plaintiff underwent arthroscopic surgery. Dr. Cohen never related this surgery to the accident. Following the surgery, plaintiff was out of work for another two months.

Plaintiff treated with Dr. David Sirkin, an osteopathic neurologist, who prescribed MRIs of the brain and spine. The MRI reports were noted to be normal as to the head and cervical spine. A small herniation was noted at L5-S1, which was not compressing on any nerves. The plaintiff was diagnosed with cervical strain and sprain and a sprain of the left shoulder. In addition, EMGs performed by Dr. Varada and Dr. A-Bhumi ruled out both cervical and lumbar radiculopathy.

As to the impact his injuries have had on his daily life, plaintiff testified that he cannot drive with his left arm, has trouble sleeping and picking up his child and his shoulder is overall uncomfortable. However, plaintiff remains employed by Upper Moreland Township and continues to drive several types of trucks and a backhoe. The plaintiff testified in his deposition that he is unable to play pickup basketball because he cannot plant his right leg. He continues to be an active father and both attends his son's sporting activities and coaches him on playing baseball.

Thus, plaintiff's injuries from this accident together with the slight impact on his daily life does not amount to a serious injury. When considering how the plaintiff's injuries affected the use of his left shoulder and right knee, the extent and duration of such impairment, and the treatment required to correct the impairment, this court determined that the plaintiff did not suffer a serious bodily injury.

## CONCLUSION

For the foregoing reasons, this court's order entering summary judgment in favor of the defendant, Laurence M. Smith, was proper and should be affirmed.